# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 5, 2009 Session

## TIMOTHY DARNELL FLOWERS v. BOARD OF PROFESSIONAL RESPONSIBILITY

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-07-1953-3    Donald P. Harris, Senior Judge**

---

**No. W2008-02648-SC-R3-CV - June 4, 2010**

---

This appeal involves a disciplinary proceeding against a Memphis lawyer whose practice focuses on immigration law. Following a hearing, one of the Board of Professional Responsibility's hearing panels unanimously determined that the lawyer should be suspended from the practice of law for one year and should be required to make restitution to three clients. The lawyer sought judicial review of the hearing panel's suspension of his license. Based on the record of the proceedings before the hearing panel, the Chancery Court for Shelby County determined that twenty-three of the twenty-six courses of conduct found by the hearing panel to violate the Rules of Professional Conduct were supported by substantial and material evidence and that the evidence supported the hearing panel's reliance on seven aggravating factors. Accordingly, the trial court determined that the suspension of the lawyer's license for one year was supported by the ABA Standards for Imposing Lawyer Sanctions (2005) and was not arbitrary and capricious. The lawyer appealed to this Court. We affirm the suspension of the lawyer's license to practice law for one year and the order directing him to make restitution to three of his clients.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part and Vacated in Part**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and SHARON G. LEE, JJ., joined.

Samuel J. Muldavin, Memphis, Tennessee, for the appellant, Timothy Darnell Flowers.

Krisann Hodges, Disciplinary Counsel, Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

**OPINION**

**I.**

Timothy Darnell Flowers has been licensed to practice law in Tennessee since 1999. He has practiced mainly as a sole practitioner and has focused his practice on immigration law. He maintains his principal office in Memphis, the current site of the only immigration court in Tennessee, and has operated a satellite office in Louisville, Kentucky. By his own estimation, Mr. Flowers has handled between 800 and 1,000 individual immigration cases before the Immigration Court, the Board of Immigration Appeals, and the United States Court of Appeals for the Sixth Circuit.

Mr. Flowers's clients present communications challenges that other lawyers do not face. Many of his clients do not speak fluent English. Additionally, many are from countries that have no written language or are not literate in the written language of their country of origin. Thus, written communication with his clients is challenging and not always effective.[1] Accordingly, Mr. Flowers uses a number of interpreters to facilitate communications with his clients and relies heavily on face-to-face meetings and telephone calls.

This disciplinary proceeding involves complaints stemming from Mr. Flowers's representation of eight individual clients,[2] a complaint against Mr. Flowers filed by the Chief Deputy Clerk of the United States Court of Appeals for the Sixth Circuit, and additional acts of misconduct uncovered during the Disciplinary Counsel's investigation. While Mr. Flowers's representation of these clients reflects similar courses of conduct, we will briefly summarize his representation of six of them.[3]

---

[1] During oral argument, counsel for Mr. Flowers stated that it is not uncommon for Mr. Flowers's clients to bring written communications to his office and to request one of Mr. Flowers's interpreters to read the communication to them.

[2] These clients include: Ahmed Bah, Mouminy Bah, Isata Jalloh, Kadija Jalloh, Fowzia Mohamed, Aliou N'Diaye, Mamadou Pame, and Victor Perez-Mendez. The record contains a wide variety of different spellings of Ms. Kadija Jalloh's name. Because the Kadija Jalloh version appears with the greatest frequency and on a document signed by Ms. Jalloh, though the correct spelling cannot be deciphered from the signature, we have elected to refer to her using this spelling variation.

[3] We have not included Mr. Flowers's representation of Isata Jalloh in this discussion because the Board of Professional Responsibility has not appealed from the reviewing court's decision to set aside the discipline based on his representation of this client.

In February 2001, Mr. Flowers agreed to represent Fowzia Mohamed in an appeal to the Board of Immigration Appeals from an adverse immigration court decision. He collected his fees and the filing fees in advance but then failed to file the appeal which was due in March 2001. Mr. Flowers claimed that he did not realize that he had failed to file Ms. Mohamed's appeal for nearly two years. When he discovered his oversight in January 2003, he filed a motion to reopen Ms. Mohamed's appeal. While Mr. Flowers did not communicate in writing with Ms. Mohamed regarding the status of her appeal, he asserts that he communicated with her orally in December 2002. Even though he promised in July 2005 and December 2006 to refund the payments that Ms. Mohamed had made, Mr. Flowers had not made this refund by the time of the formal disciplinary hearing in June 2007.

Mouminy Bah had a similar experience with Mr. Flowers. In June 2004, he retained Mr. Flowers to file an appeal with the Board of Immigration Appeals from an adverse decision in his asylum case and paid Mr. Flowers $710. Mr. Flowers failed to file the appeal by the June 9, 2004 deadline. As a result of Mr. Flowers's conduct, Mr. Mouminy Bah's appeal became time-barred. Although Mr. Flowers indicated on more than one occasion beginning in November 2005 that he would refund Mr. Mouminy Bah's payments, he failed to do so until June 2007. Mr. Flowers also failed to maintain the unearned attorney's fees in his trust account.

Mr. Flowers also collected fees from Ahmed Bah but failed to perform the agreed upon services. After Mr. Ahmed Bah filed a complaint with the Board of Professional Responsibility, Mr. Flowers agreed to refund Mr. Ahmed Bah $800. Based on this agreement, the Board agreed in February 2005 to issue a private reprimand. Disciplinary Counsel later ascertained that Mr. Flowers's refund check to Mr. Ahmed Bah was returned for insufficient funds. Disciplinary Counsel also discovered that Mr. Flowers had been maintaining his trust account at an unapproved institution, that he had failed to deposit $800 into the account before sending his check to Mr. Ahmed Bah, and that he had again failed to separate his funds from his client's.

Mr. Flowers also failed to provide professional services to Aliou N'Diaye in a timely manner. Mr. N'Diaye retained Mr. Flowers to pursue an appeal to the Board of Immigration Appeals. Even though he indicated in the notice of appeal that a brief would be forthcoming, Mr. Flowers failed to file a brief on Mr. N'Diaye's behalf, and Mr. N'Diaye's appeal was dismissed. Mr. Flowers claimed that his failure to file the brief was part of a broader strategy. After Mr. N'Diaye's appeal was dismissed, Mr. Flowers filed several motions to reopen Mr. N'Diaye's case, but every one of these motions was filed after the ninety-day period for filing motions to reopen had expired.

One of the motions to reopen that Mr. Flowers filed on Mr. N'Diaye's behalf was based on an adjustment of status resulting from Mr. N'Diaye's marriage to an American citizen. This motion was premature because Mr. N'Diaye's spouse's I-130 form[4] had not yet been approved. When Mr. Flowers renewed the motion following the approval of the I-130 form, the Board of Immigration Appeals found that Mr. N'Diaye's motion was time-barred.[5]

Victor Perez-Mendez received similar treatment from Mr. Flowers in a deportation proceeding. Mr. Flowers moved for a continuance of the deportation hearing but failed to file an application for statutory cancellation of removal or the required supporting documents and exhibits. As a result of Mr. Flowers's failure to file these documents, the immigration court granted the government's motion to pretermit Mr. Perez-Mendez's application for statutory cancellation of removal. Mr. Flowers also failed to seek reconsideration of this ruling. Because of Mr. Flowers's inaction, Mr. Perez-Menedez is barred from filing an application for statutory cancellation of removal.[6]

Between October 31, 2002 and April 28, 2003, Mamadou Pame paid Mr. Flowers $1,500 as a "non-refundable retainer" and for "brief preparation." Even though he represented to the immigration court that he was Mr. Pame's lawyer for the purpose of obtaining a copy of the decision in Mr. Pame's case, Mr. Flowers never filed a brief with the Board of Immigration Appeals. Instead, he prepared a three and one-half page letter, signed Mr. Pame's name, and mailed it to the Board of Immigration Appeals. Mr. Flowers never sought Mr. Pame's permission to sign his name on the letter and never provided Mr. Pame with a copy of the letter.

---

[4]"To obtain an immigrant visa based on marriage to a United States citizen, the American spouse must first file a Form I-130 Petition for Alien Relative to establish his or her relationship to the spouse who seeks to immigrate to the United States. If immigration officials approve the I-130 application, the alien spouse must then file a Form I-485 Application to Register for Permanent Residence or Adjust Status." Reynaldo Ramirez, Jr., *Title 18 U.S.C. § 922(G)(5)(A): A Strict Liability Statute and Entrapment by Estoppel - A Viable Defense for Texas Commissioned Security Officers Defined as Illegal Aliens in Light of Fifth Circuit Rulings in* Lucio v. United States *and* United States v. Uresti-Careaga, 34 T. Marshall L. Rev. 397, 398 n.3 (2009) (citation omitted).

[5]Mr. Flowers stated that he had obtained an agreement from a lawyer representing the Department of Homeland Security permitting him to file a joint motion to reopen and remand Mr. N'Diayes's case following approval of his spouse's I-130 form. However, Mr. Flowers produced no written documentation or other evidence of this agreement.

[6]In the proceeding before the hearing panel, Mr. Flowers insisted that he knew that Mr. Perez-Mendez was not likely to prevail on his request for statutory cancellation of removal and that he believed that Mr. Perez-Mendez had a stronger case for asylum and relief under the Nicaraguan Adjustment and Central American Relief Act. However, Mr. Flowers did not communicate this opinion to Mr. Perez-Mendez and did not obtain Mr. Perez-Mendez's permission to withdraw the statutory cancellation claim.

-4-

Kadija Jalloh also experienced difficulties with Mr. Flowers's representation. Mr. Flowers agreed in September 2003 to represent Ms. Kadija Jalloh in seeking asylum. As a result of confusion between Mr. Flowers and Ms. Kadija Jalloh as to whether a June 2004 asylum hearing had been continued to a later date, Ms. Kadija Jalloh did not attend the hearing and her deportation was ordered. Mr. Flowers, who had been seeking the continuance because he did not have a copy of Ms. Kadija Jalloh's birth certificate, was provided with this document in October 2004 but did not seek to reopen her case until March 2005.

Mr. Flowers's clients are not the only persons to raise concerns regarding his conduct. The chief deputy clerk of the United States Court of Appeals for the Sixth Circuit submitted a complaint against Mr. Flowers. The clerk asserted that between 2004 and 2005, Mr. Flowers filed eighteen petitions for appellate review of decisions of the Board of Immigration Appeals on behalf of eighteen different clients. All of these petitions were dismissed for want of prosecution because Mr. Flowers either failed to pay the filing fee, failed to file the required forms, or failed to file a brief. According to the clerk, court personnel contacted Mr. Flowers to address these defects in his appeals. Mr. Flowers failed to remedy the deficiencies sufficiently to avoid dismissal.[7]

In two of these cases, Mr. Flowers tendered checks to the appellate court drawn on his trust account. The financial institution where Mr. Flowers maintained his trust account was not an approved institution. Because these checks were returned for insufficient funds, the appellate court informed Mr. Flowers that his future payments would be required to be by certified check or money order. Notwithstanding these instructions, Mr. Flowers submitted checks drawn on his trust account in three additional cases. Even though these errors were later remedied, the United States Court of Appeals eventually dismissed these appeals for lack of jurisdiction, want of prosecution, and failure to file a brief.

This disciplinary proceeding was not Mr. Flowers's first encounter with the Board of Professional Responsibility. In addition to the private reprimand he received in February 2005 stemming from his representation of Mr. Ahmed Bah, he was suspended from the practice of law from September 7, 2004 to September 15, 2004, for failure to satisfy the continuing legal education requirements. He was again suspended from October 3, 2005 to October 15, 2005, for the same reason. Finally, Mr. Flowers's license was suspended from September 26, 2005 to January 10, 2006, because he failed to pay his annual registration fee.

Mr. Flowers continued to practice law during each of these periods of administrative suspension. He conducted phone conferences and filed briefs, motions, petitions, notices of

---

[7]Mr. Flowers later testified that he allowed these cases to be dismissed for strategic reasons.

-5-

appeal, notices of appearance, requests for copies of hearing tapes and immigration court decisions, and transmitted other legal documents to the immigration courts, the Board of Immigration Appeals, and the United States Court of Appeals for the Sixth Circuit. Mr. Flowers did not apprise his clients or the tribunals before which he was practicing that his license had been suspended between September 7, 2004 and September 15, 2004, and between September 26, 2005 and January 10, 2006.

After receiving complaints regarding Mr. Flowers's conduct, Disciplinary Counsel requested Mr. Flowers to file formal responses to the complaints. Mr. Flowers failed to do so. On December 28, 2005, Disciplinary Counsel filed a disciplinary petition against Mr. Flowers. Mr. Flowers answered this petition on January 31, 2006. Thereafter, on May 31, 2006 and August 16, 2006, Disciplinary Counsel filed a supplemental petition and a second supplemental petition for discipline. Mr. Flowers responded to these petitions on August 15, 2006 and September 7, 2006 respectively. On November 21, 2006, Disciplinary Counsel propounded a request for admissions to which Mr. Flowers responded on December 19, 2006.

On March 21, 2007, Disciplinary Counsel moved for a partial summary judgment and included a statement of undisputed material facts with the motion. In this motion, Disciplinary Counsel asserted that, based on the undisputed facts, Mr. Flowers had violated seven Disciplinary Rules based on his conduct prior to March 1, 2003[8] and fourteen Rules of Professional Conduct[9] by his conduct thereafter. Mr. Flowers opposed the motion for partial summary judgment but did not contradict the statement of undisputed facts. The hearing panel granted Disciplinary Counsel's motion for partial summary judgment on June 5, 2007.

The hearing panel conducted a hearing on the remaining issues on June 21, 2007. On August 6, 2007, the hearing panel filed its judgment, along with lengthy and detailed findings of fact and conclusions of law. The panel concluded that Mr. Flowers had violated Tenn. Sup. Ct. R. 8, DR 1-102(A)(1), (4), (5), (6), 2-106(A), 6-101(A)(3), 7-101(A)(2), (3), 7-102(A)(3), (5), and 9-102(A), (B). The panel also concluded that Mr. Flowers had violated

---

[8]Prior to March 1, 2003, the effective date of the current Rules of Professional Conduct, the Code of Professional Responsibility governed the professional conduct of lawyers. *See Henderson v. Bd. of Prof'l Responsibility*, 125 S.W.3d 405, 408 n.2 (2003). Accordingly, with regard to Mr. Flowers's professional conduct that occurred before March 1, 2003, Disciplinary Counsel alleged that Mr. Flowers had violated Tenn. Sup. Ct. R. 8, DR 1-102(A), 2-106(A), 6-101(A), 7-101(A), 7-102(A), 9-102(A), and 9-102(B).

[9]Tenn. Sup. Ct. R. 8, RPC 1.1, 1.2, 1.3, 1.4(a), (b), 1.5(a), 1.7(b), 1.15(a), (b), 1.16(d), 3.3(a), 3.4(c) 5.3(b), 5.5(a), 8.4(a), (c), (d), (g) and Tenn. Sup. Ct. R. 9, § 29.1(A)(1).

Tenn. Sup. Ct. R. 8, RPC 1.1, 1.2(a), 1.3, 1.4(a), (b), 1.5(a), 1.15(a), (b), 1.16(d)(1), (2), (4), (5), 3.3(a), 3.4(c), 4.4(a), 5.5(a), 8.4(a), (c), (d), (g), and Tenn. Sup. Ct. R. 9, § 29.1(A)(1).

The hearing panel also considered the aggravating and mitigating factors identified in the American Bar Association's Standards for Imposing Lawyer Sanctions (2005) ("ABA Standards") which the Board of Professional Responsibility has adopted.[10] *See* ABA Standards §§ 9.22, 9.32. The hearing panel found the existence of multiple aggravating factors including that Mr. Flowers (1) had a prior disciplinary offense resulting in a 2005 private reprimand as to six complaint files related to neglect for failing to move with reasonable promptness in his immigration law practice, (2) failed to refund unearned fees as promised in either a timely fashion or at all, affording evidence of a selfish motive, (3) engaged in a pattern of neglect and dilatory conduct, (4) committed multiple offenses, (5) refused to acknowledge the wrongful nature of his conduct, (6) affected vulnerable victims by his actions, and (7) has been indifferent to making restitution to former clients.

In light of its findings regarding Mr. Flowers's multiple acts of misconduct and the presence of numerous aggravating factors, the hearing panel suspended Mr. Flowers's license to practice law for one year. In addition, the hearing panel conditioned the reinstatement of Mr. Flowers's license on his compliance with the requirements prescribed by a reinstatement committee and this Court. Finally, the hearing panel directed Mr. Flowers to pay the costs of the proceeding and to make restitution to Ms. Mohamed and Messrs. Amadou Tidjani Bah[11] and Mouminy Bah.

Mr. Flowers filed a petition for writ of certiorari and supersedeas in the Chancery Court for Shelby County seeking judicial review of the hearing panel's decision. The trial court reviewed the record of the proceeding before the hearing panel and filed a detailed memorandum opinion on September 17, 2008. The trial court concluded that twenty-three of twenty-six courses of conduct found by the hearing panel to be violations of the Code of Professional Conduct and the Rules of Professional Responsibility were supported by

---

[10]Tenn. Sup. Ct. R. 9, § 8.4; *see Bd. of Prof'l Responsibility v. Maddux*, 148 S.W.3d 37, 40 (Tenn. 2004).

[11]In addition to providing that restitution be paid to Mouminy Bah and Fowzia Mohamed, the hearing panel also directed Mr. Flowers to pay $3,360 in restitution to Amadou Tidjani Bah. The trial court affirmed this judgment. The parties' briefing seemingly suggests a restitution award to Ahmed Bah. We are, however, unable to readily decipher from the record whether Ahmed Bah and Amadou Tidjani Bah are the same person or the exact basis for the decision to set the restitution amount at $3,360, as opposed to a higher or lower amount. Mr. Flowers has not challenged the amount of restitution or the appropriateness of the restitution being paid to Amadou Tidjani Bah. Additionally, the Board has not raised any concerns regarding this matter. Accordingly, we decline to pursue these issues further.

substantial and material evidence. In its final judgment entered on October 23, 2008, the trial court found that "[i]n view of the number of violations that were supported by evidence and the aggravating circumstances found to apply, the court is of the opinion that a one-year suspension, the requirement that Mr. Flowers make restitution, and the additional requirement that he petition for reinstatement were appropriate sanctions."

Mr. Flowers filed a notice of appeal with this Court on November 19, 2008. His two briefs contain numerous concessions regarding the impropriety of his conduct. He concedes that his dilatory responses to the complaints involving Mses. Mohamed and Kadija Jalloh and Messrs. Pame and Mouminy Bah violated Tenn. Sup. Ct. R. 8, RPC 8.1(b).[12] He also concedes that he violated Tenn. Sup. Ct. R. 8, RPC 1.15(a)[13] by giving Mr. Ahmed Bah a worthless check written on a trust account that was not maintained at an approved financial institution. Mr. Flowers likewise concedes that he violated Tenn. Sup. Ct. R. 8, RPC 1.15(a) by tendering checks without sufficient funds in his trust account to the United States Court of Appeals for the Sixth Circuit. Along with these concessions, Mr. Flowers asserts that these violations were inadvertent and that he has closed the unapproved trust account.

Mr. Flowers admits that he failed to file an appeal on behalf of Ms. Mohamed and that he did not inform her in writing of his failure to do so. He also admits that he violated Tenn. Sup. Ct. R. 8, RPC 1.3,[14] 1.4(a),[15] and 1.4 (b)[16] in his representation of Mr. Mouminy Bah. Likewise, he concedes that he continued to practice law while his license was suspended for failing to pay his annual registration fee and for failing to obtain the required hours of continuing legal education and that he failed to notify his clients or the tribunals before which he was practicing that his license had been suspended. As mitigation, Mr. Flowers

---

[12]Tenn. Sup. Ct. R. 8, RPC 8.1(b) provides, in relevant part, that "a lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

[13]Tenn. Sup. Ct. R. 8, RPC 1.15(a) requires that "[a] lawyer shall hold property and funds of clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property and funds."

[14]Tenn. Sup. Ct. R. 8, RPC 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[15]Tenn. Sup. Ct. R. 8, RPC 1.4(a) mandates that "[a] lawyer shall keep a client reasonably informed about the status of a matter and comply with reasonable requests for information within a reasonable time."

[16]Tenn. Sup. Ct. R. 8, RPC 1.4(b) requires that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

offers that he "never wilfully engaged in unauthorized practice," that he "took steps to avoid doing so," and that he "has been forthcoming about this administrative shortcoming since the inception of these proceedings."

Although he concedes that he has violated many Rules of Professional Conduct, Mr. Flowers insists that the trial court erred by affirming the hearing panel's findings that he committed any of the disciplinary violations that he has not admitted. He also insists that his "one-year suspension [should] be reversed and that [he should] receive a sanction consistent with the violations to which he has readily admitted." Mr. Flowers supports these assertions with the following seven arguments. First, his clients' complaints should be disregarded because the clients filed them solely to maintain or advance their immigration appeals. Second, disciplinary matters involving the practice of immigration law should be addressed by the Board of Immigration Appeals rather than state disciplinary authorities. Third, the hearing panel's emphasis on written communications with his clients was misplaced because most of his clients are illiterate in English, as well as in the written languages of their countries of origin. Fourth, purposely delaying proceedings is an appropriate tactic in immigration matters. Fifth, the hearing panel's finding that his fees were unreasonable is not supported by substantial and material evidence. Sixth, the hearing panel's findings regarding the vulnerability of his clients is not supported by substantial and material evidence. Finally, his failure to object to Disciplinary Counsel's statement of undisputed facts filed in support of the motion for partial summary judgment does not provide a basis for any findings of misconduct other than the misconduct he has admitted.

Disciplinary Counsel responds that the evidence presented to the hearing panel establishes Mr. Flowers's many violations of the Code of Professional Responsibility and the Rules of Professional Conduct irrespective of the motivations of his clients for filing the complaints. Disciplinary Counsel also insists that its authority and the authority of this Court over professional conduct of attorneys practicing in Tennessee extends to attorneys practicing in the area of immigration law. Additionally, Disciplinary Counsel contends that the hearing panel's findings are supported by substantial and material evidence of violations of the Code of Professional Responsibility and the Rules of Professional Conduct and that the hearing panel correctly applied the ABA Standards with regard to its decision to suspend Mr. Flowers's license to practice law for one year.

## II.

This Court is the final and ultimate arbiter of the propriety of the professional conduct of all lawyers practicing in Tennessee. *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 612 (Tenn. 2010). Accordingly, when we are called upon to review judgments in disciplinary proceedings against lawyers, we do so in light of our fundamental and inherent

power to promulgate, administer, and enforce the rules governing the licensing and professional conduct of lawyers practicing in Tennessee. *Rayburn v. Bd. of Prof'l Responsibility*, 300 S.W.3d 654, 660 (Tenn. 2009).

When an attorney or the Disciplinary Counsel seeks judicial review of a hearing panel's decision, the trial court's "review shall be on the transcript of the evidence before the hearing panel and its findings and judgment." Tenn. Sup. Ct. R. 9, § 1.3. However, "[i]f allegations of irregularities in the procedure before the panel are made, the trial court is authorized to take such additional proof as may be necessary to resolve such allegations." Tenn. Sup. Ct. R. 9, § 1.3. If either the attorney or the Disciplinary Counsel appeals to this Court, our review of an appeal in a disciplinary matter is based upon the transcript of the record before the trial court and a transcript of evidence before the hearing panel and before the trial court if any evidence has been produced. Tenn. Sup. Ct. R. 9, § 1.3.

Like the trial court, we

> may affirm the decision of the panel or remand the case for further proceedings. [We] may reverse or modify the decision if the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Sup. Ct. R. 9, § 1.3; *see also Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d at 612. In assessing "the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact." Tenn. Sup. Ct. R. 9, § 1.3. To determine "whether 'substantial and material' evidence supports the panel's decision, the Court evaluates whether the evidence 'furnishes a reasonably sound factual basis for the decision being reviewed.'" *Threadgill v. Bd. of Prof'l Responsibility*, 299 S.W.3d 792, 807 (Tenn. 2009) (quoting *City of Memphis v. Civil Serv. Comm'n of Memphis*, 216 S.W.3d 311, 317 (Tenn. 2007)).

## III.

Mr. Flowers first asserts that the hearing panel should either have completely disregarded the complaints filed by his clients or, at least, should have given these complaints less weight because filing disciplinary complaints against lawyers is a common tactic used to reopen immigration cases. He points to *In re Lozada*, 19 I. & N. Dec. 637 (BIA 1988) for the proposition that his clients were required to file disciplinary complaints against him if they sought to have their immigration cases reopened for ineffective assistance of counsel. We find this argument unpersuasive.

When a complaint is filed against a lawyer in Tennessee, Disciplinary Counsel must investigate the alleged misconduct.[17] Following the investigation, Disciplinary Counsel has several options, including dismissal of the complaint, an informal admonition, a private reprimand, a public censure, or a prosecution of formal charges before a hearing panel.[18] Accordingly, Disciplinary Counsel is not required to proceed to a prosecution of formal charges based upon every complaint and instead may recommend dismissal, informal admonition, private reprimand, or public censure.[19] Tenn. Sup. Ct. R. 9, §§ 7.2, 8.1.

If Disciplinary Counsel recommends proceeding to a formal hearing, the Board of Professional Responsibility must then review the recommendation and decide whether to approve or modify it.[20] If the matter proceeds to a formal hearing before a hearing panel, Disciplinary Counsel bears the burden of proving misconduct by a preponderance of the evidence.[21] Following the hearing, the hearing panel decides whether Disciplinary Counsel has established one or more grounds of misconduct.[22] An attorney may seek judicial review

---

[17]Tenn. Sup. Ct. R. 9, §§ 1.1, 7.1, 7.2, 8.1.

[18]Tenn. Sup. Ct. R. 9, § 8.1.

[19]When the Disciplinary Counsel's recommended disposition is dismissal or an informal admonition, the recommendation is reviewed by a member of the district committee in the appropriate disciplinary district who may approve or modify it. Disciplinary Counsel may appeal the action of the district committee member to the Board of Professional Responsibility. Tenn. Sup. Ct. R. 9, § 8.1.

[20]Tenn. Sup. Ct. R. 9, § 8.1.

[21]Tenn. Sup. Ct. R. 9, § 8.2.

[22]Tenn. Sup. Ct. R. 9, §§ 8.2, 8.3, 8.4.

of the hearing panel's judgment in either the circuit or chancery court.[23]  The trial court's review

> shall be on the transcript of the evidence before the hearing panel and its findings and judgment.  If allegations of irregularities in the procedure before the panel are made, the trial court is authorized to take such additional proof as may be necessary to resolve such allegations. The court may affirm the decision of the panel or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the panel as to the weight of the evidence on questions of fact.

Tenn. Sup. Ct. R. 9, § 1.3.

In other words, the filing of a complaint does not, as suggested by Mr. Flowers, equate with a finding that an attorney has committed misconduct.  Rather, upon receiving a complaint, Disciplinary Counsel conducts an investigation and determines the appropriate course of action.  If, as in this case, Disciplinary Counsel determines that a formal hearing is appropriate and that recommendation is accepted by the Board of Professional Responsibility, the matter is then heard by a hearing panel.  The hearing panel makes its own independent determination as to whether the attorney engaged in misconduct.  The hearing panel's decision is then appealable to the courts.

The motivations of Mr. Flowers's clients, whatever they may have been, to file disciplinary complaints against him does not render these complaints frivolous and certainly

---

[23]Tenn. Code Ann. § 27-9-101 (2000); Tenn. Sup. Ct. R. 9, §§ 1.3, 8.4.

does not nullify or undermine the findings of the hearing panel and the trial court. A client's self-interested motivation for filing a complaint certainly provides fair grounds for questioning the client's credibility or to undermine the force of the client's complaint. In fact, Mr. Flowers pursued this strategy before the hearing panel by citing and relying on *In re Lozada*. There is no indication in this record that the hearing panel failed to consider these arguments. To the contrary, the hearing panel asked questions regarding the *In re Lozada* requirements.

Mr. Flowers's argument that his clients' complaints should be entirely disregarded lacks support in logic and law. The argument ignores the independent and critical roles of (1) the Disciplinary Counsel in investigating the complaint and in determining whether proceeding to a formal hearing is warranted, (2) the Board of Professional Responsibility in reviewing that recommendation, (3) the hearing panel in reaching a conclusion as to whether misconduct was committed, and (4) the role of the trial court in addressing an appeal from the hearing panel's decision. We will not invalidate the judgment of the hearing panel or the decision of the trial court based upon the self-interested nature of Mr. Flowers's clients' complaints.

## IV.

Mr. Flowers next asserts that serious concerns arise "when attorneys unschooled in the practice of immigration law are asked to sit in judgment of an immigration practitioner." He argues that, pursuant to a decision of the United States Attorney General in *In re Compean*, 24 I. & N. Dec. 710 (A.G. 2009), "it is the Board of Immigration Affairs[24] that shall arbitrate the bar complaint because what constitutes diligent practice of immigration law may differ in certain respects from diligent practice in other areas of the law."

The decision of the Attorney General of the United States in *In re Compean* appeared to remove the requirement, set forth in *In re Lozada*, of filing a complaint with the state disciplinary body in order to reopen an immigration case based upon ineffective assistance of counsel. *In re Compean*, 24 I. & N. Dec. at 737. Instead of filing a complaint directly with the state disciplinary authority, the Attorney General's decision required resident aliens to attach a completed and signed complaint to their motion and provided that the Board of Immigration Appeals will determine whether to refer the complaint to the appropriate state disciplinary body. *In re Compean*, 24 I. & N. Dec. at 737-38.

Shortly after Mr. Flowers filed his brief in this Court, the acting Attorney General vacated his predecessor's directive. *In re Compean*, 25 I. & N. Dec. 1 (A.G. 2009). In

---

[24]It appears that this reference is intended to be to the Board of Immigration Appeals.

reaching the conclusion to vacate the earlier decision, the acting Attorney General stated the following:

> Establishing an appropriate framework for reviewing motions to reopen immigration proceedings based on claims of ineffective assistance of counsel is a matter of great importance. I do not believe that the process used in *Compean* resulted in a thorough consideration of the issues involved, particularly for a decision that implemented a new, complex framework in place of a well-established and longstanding practice that had been reaffirmed by the Board in 2003 after careful consideration. The preferable administrative process for reforming the *Lozada* framework is one that affords all interested parties a full and fair opportunity to participate and ensures that the relevant facts and analysis are collected and evaluated.
>
> Accordingly, I direct the Acting Director of the Executive Office for Immigration Review to initiate rulemaking procedures as soon as practicable to evaluate the *Lozada* framework and to determine what modifications should be proposed for public consideration. After soliciting information and public comment, through publication of a proposed rule in the Federal Register, from all interested persons on a revised framework for reviewing claims of ineffective assistance of counsel in immigration proceedings, the Department of Justice may, if appropriate, proceed with the publication of a final rule.

*In re Compean*, 25 I. & N. Dec. at 2. Thus, the earlier *In re Compean* order on which Mr. Flowers relies is now without force.

However, even if the Attorney General's decision had not been vacated, Mr. Flowers's argument would still be unavailing. While the Attorney General expressed concern in the first *In re Compean* order that *In re Lozada*'s complaint requirement was contributing to the filing of frivolous complaints before state disciplinary bodies, the Attorney General expressly noted that, although no longer required to do so, a resident alien may still choose to file a complaint directly with the state disciplinary authorities. *In re Compean*, 24 I. & N. Dec. at 738 n.11. Furthermore, nothing in *In re Compean* reflects any attempt to preempt the exercise of state disciplinary authority over immigration lawyers nor does its reasoning give any pause to the exercise of oversight over Tennessee licensed attorneys engaging in the practice of immigration law.

-14-

Quite to the contrary of Mr. Flowers's assertion that state disciplinary authorities have no role with regard to the practice of immigration law, there is an important role to be exercised by the Board of Professional Responsibility with regard to the practice of immigration lawyers in Tennessee. On the national level, federal judges have increasingly expressed concerns about the representation afforded by some of the lawyers handling immigration cases.[25] Rather than state disciplinary bodies being a hindrance in immigration practice, commentators have suggested that such state professional oversight authorities may play an important role in helping protect vulnerable clients and ensure that state practice standards for representation of clients are adhered to by lawyers practicing in this field.[26] We are not persuaded by Mr. Flowers's contention that *In re Compean* or its reasoning, even if it had not been vacated, require or even suggest that state disciplinary authorities should withdraw from involvement in regulating the professional responsibility standards for licensed attorneys practicing in the area of immigration law.

## V.

Mr. Flowers next argues that the hearing panel erred by finding that he violated Tenn. Sup. Ct. R. 8, RPC 1.4(a), (b).[27] The hearing panel found nine incidents of misconduct involving violations of both subsections of Rule 1.4 by Mr. Flowers with regard to his representation of Mses. Mohamed and Kadija Jalloh and Messrs. Ahmed Bah, Mouminy Bah, Pame, Perez-Mendez, and N'Diaye. The trial court affirmed these findings with one exception. The court set aside the hearing panel's finding with regard to Mr. Flowers's

---

[25] *See generally*, *e.g.*, *Aris v. Mukasey*, 517 F.3d 595, 600 (2d Cir. 2008) (noting "the disturbing pattern of ineffectiveness evidenced in the record in this case (and, with alarming frequency, in other immigration cases before us)"); Richard L. Abel, *Practicing Immigration Law in Filene's Basement*, 84 N.C. L. Rev. 1449, 1491 (2006); LaJuana Davis, *Reconsidering Remedies for Ensuring Competent Representation in Removal Proceedings*, 58 Drake L. Rev. 123, 141-43 (2009); Robert A. Katzmann, *The Legal Profession and the Unmet Needs of the Immigrant Poor*, 21 Geo. J. Legal Ethics 3, 9 (2008).

[26] *See e.g.*, Peter L. Markowitz, *Barriers to Representation for Detained Immigrants Facing Deportation: Varick Street Detention Facility, A Case Study*, 78 Fordham L. Rev. 541, 574 (2009); Careen Shannon, *Regulating Immigration Legal Service Providers: Inadequate Representation and Notario Fraud*, 78 Fordham L. Rev. 577, 611-12 (2009).

[27] Tenn. Sup. Ct. R. 8, RPC 1.4 requires that

(a) A lawyer shall keep a client reasonably informed about the status of a matter and comply with reasonable requests for information within a reasonable time.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

representation of Ms. Kadija Jalloh.[28]  Disciplinary Counsel has not appealed the trial court's decision to set aside the hearing panel's findings regarding Ms. Jalloh.

Mr. Flowers concedes that he violated Rule 1.4(a), (b) with regard to his representation of Mr. Mouminy Bah and Ms. Mohamed.  However, he insists that the hearing panel erred by finding misconduct with regard to his representation of Messrs. Ahmed Bah, Pame, Perez-Mendez, and N'Diaye.  He argues that the hearing panel placed too much emphasis on written correspondence with his non-English speaking clients, many of whom came from cultures with no written language or were not literate in the language of their country of origin.  He also notes the difficulties with communications because many of his clients moved frequently and with arranging meetings because of scheduling conflicts and his clients' lack of transportation.

In light of these circumstances, Mr. Flowers argues that the hearing panel failed to take into consideration the practical realities of communicating with clients who present such communication complexities.  In light of the difficulties with written communications, Mr. Flowers asserts that he followed a reasonable, pragmatic course by hiring multiple interpreters to facilitate communication with his clients and that he was able to communicate appropriately with his clients through face-to-face meetings and by telephone.

Mr. Flowers's argument is not without some resonance.  However, it applies only to the Tenn. Sup. Ct. R. 8, RPC 1.4(a), (b) violations with regard to Mr. Pame.  As for the remaining violations of Tenn. Sup. Ct. R. 8, RPC 1.4(a), (b), which include misconduct with regard to his representation of Messrs. Ahmed Bah, Perez-Mendez, and N'Diaye, the argument is inapplicable because the hearing panel's findings did not involve Mr. Flowers's failure to communicate with these clients in writing.  These violations were linked to Mr. Flowers's failure to attempt to communicate with these clients regarding significant matters or Mr. Flowers providing misleading or inaccurate information to these clients.

Turning to Mr. Flowers's representation of Mr. Pame, Mr. Flowers did not dispute that he did not have a written employment contract, fee agreement, or agreement limiting the scope of his representation.  Mr. Flowers also conceded that he did not send Mr. Pame a

---

[28]The trial court explained as follows:

> According to the unrebutted testimony of Mr. Flowers, he did keep Ms. Jalloh reasonably informed of the status of her case by oral communications.  The hearing panel could not ignore that testimony.  While Mr. Flowers did not send Ms. Jalloh copies of the motions he was filing, the court is of the opinion sending the client copies of all pleadings is not required by the rule.  The hearing panel's finding that Mr. Flowers violated Rule 1.4(a)(b) with regard to Ms. Jalloh must be set aside.

written copy of a letter to which he signed Mr. Pame's name either before or after filing it with the Board of Immigration Appeals. These admissions formed the basis of the hearing panel's determination that Mr. Flowers violated Tenn. Sup. Ct. R. 8, RPC 1.4(a), (b) with regard to his representation of Mr. Pame. Mr. Flowers, however, offered unrebutted testimony during the hearing regarding language difficulties in communicating with Mr. Pame, as well as his own diligent maintenance of oral communication and consultation with Mr. Pame via Mr. Pame's own interpreter.

Mr. Flowers's argument regarding what constitutes reasonable communication with non-English speaking clients from cultures without written languages or non-literate clients raises an important issue that warrants close examination and studious reflection. Disciplinary Counsel, however, failed to even address it. Given this oversight, the complexity of the issue, and the dearth of competent evidence presented by Disciplinary Counsel regarding the appropriate ways to communicate with illiterate, non-English speaking clients, we find that Disciplinary Counsel has not rebutted Mr. Flowers's arguments with regard to the violation of Tenn. Sup. Ct. R. 8. PRC 1.4(a), (b) as it relates to the representation of Mr. Pame. Mr. Flowers's argument, however, is inapplicable to the violations of Tenn. Sup. Ct. R. 8, RPC 1.4(a), (b) as they relate to his representation of Messrs. Ahmed Bah, Perez-Mendez, and N'Diaye. Accordingly, his argument does not provide a basis for setting aside the hearing panel's findings with regard to these clients.

## VI.

Mr. Flowers also contends that the hearing panel erred by finding that he violated Tenn. Sup. Ct. R. 8, RPC 4.4(a).[29] He argues that his action "to stay removal proceedings based upon the possibility that presently nonexistent grounds for remaining in the United States might arise in the future, was not only proper, but sound immigration practice." He asserts that the hearing panel's determination that this action violated Tenn. Sup. Ct. R. 8, RPC 4.4(a) reflects a "misapprehension regarding sound immigration law practice and not upon misconduct on [Mr. Flowers's] part."

Having considered Mr. Flowers's argument, it is more accurate to state that Mr. Flowers misapprehends the distinction between zealous representation of his clients and a violation of Tenn. Sup. Ct. R. 8, RPC 4.4(a). While there are numerous attorneys working in the area of immigration law who do not run afoul of this rule, Mr. Flowers is certainly not alone among the practitioners of immigration law who do. The filing of frivolous appeals

---

[29]Tenn. Sup. Ct. R. 8, RPC 4.4(a) provides that "[i]n representing a client, a lawyer shall not . . . use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person."

"is a recurring problem in immigration practice. Part of the lawyer's eagerness in bringing such an action may be attributed to the fact that under immigration laws, an alien who files a petition for review in federal court is generally granted an automatic stay of deportation."[30] Because "of these kinds of appeals [an] immigrant often stays in the U.S. for a number of years beyond the time to which he [or she] is entitled."[31]

In a seminal case issued more than three decades ago, the United States Court of Appeals for the First Circuit wrestled with a petition for disciplinary action filed against an attorney who had engaged in conduct similar to Mr. Flowers. *In re Bithoney*, 486 F.2d 319 (1st Cir 1973). Precisely as Mr. Flowers has done, Mr. Bithoney filed multiple appeals in order to stay the proceedings and to prevent deportation of his clients and then let the appeals languish until they were dismissed. *In re Bithoney*, 486 F.2d at 320-21. Responding to Mr. Bithoney's contention that he was simply engaged in zealous representation of his clients to prevent their deportation, the United States Court of Appeals reasoned as follows:

> [W]e [must] indulge every presumption in favor of the attorney who presents or defends a position which is found to lack support. We must insure that there is breathing room for the fullest possible exercise of the advocacy function. But there must be limits. . . . [T]he duty of a lawyer is to represent his client zealously, but only 'within the bounds of the law'. The processes of this court are made available for the general good; to the extent that they are abused they become less available to those genuinely in need of them. Such abuse also lowers public esteem for the judicial system and, particularly in the situation presented here, can unjustifiably result in unmerited benefit.

*In re Bithoney*, 486 F.2d at 322. Drawing upon a prior decision of the United States Court of Appeals for the Fourth Circuit, the court declared:

> While we must be careful to assure that the courts are always open to complaining parties, we have an equal obligation to see that its processes are not abused by harassing, or by recklessly invoking court action in frivolous causes or by foot dragging

---

[30] Robert G. Heiserman & Linda K. Pacun, *Professional Responsibility in Immigration Practice and Government Services*, 22 San Diego L. Rev. 971, 980-81 (1985).

[31] Katy Motiey, Note, *Ethical Violations by Immigration Attorneys: Who Should Be Sanctioning?*, 5 Geo. J. Legal Ethics 675, 677 (1992).

and delaying in order to deny or postpone the enjoyment of unquestioned rights. Lawyers have an obligation as officers of the court not to indulge in any of these practices. Vexatious litigation and the law's delays have brought the courts in low repute in many instances, and when the responsibility can be fixed, remedial action should be taken.

*In re Bithoney*, 486 F.2d at 322 n.1 (quoting *Gullo v. Hirst*, 332 F.2d 178, 179 (4th Cir. 1964).

We share the sentiments of the United States Court of Appeals for the First Circuit. We are wary of creating a standard that would inhibit attorneys from aggressively and zealously pursuing their clients' interests. The law is not static and requires lawyers to push its boundaries, including seeking change therein. When an attorney is near, or even slips slightly over, the line where zealous representation goes too far, we will indulge a presumption in favor of the attorney advocating for his or her client in order to provide breathing room for such representation. However, that does not mean that the practice of law is unbounded.

More than a century ago, a commentator on legal ethics wrote that

[i]n . . . the profession of the law, the lawyer is not a hired mercenary; nor a hired blackguard; nor a hired vilifier of the other side; but rather is to be compared to the noble knights of the middle ages, who were professional warriors in the interest of truth and justice; who donned their armor and fought their battles, after due notice, in the open; their oath was to conquer or die on the field of honor, but they were to conquer in a fair and open fight.[32]

Unfortunately, this description sounds somewhat antiquated and a trifle naive in our current legal climate, but there is more than one kernel of truth buried in it. One truth is that lawyers are not mercenaries but rather are professional advocates and counselors. While others may have different views of the practice of law,[33] we subscribe to Chief Justice Cardozo's view

---

[32]John C. Harris, *Legal Ethics*, 69 Alb. L. J. 300, 304 (1907).

[33]For example, in 1818, Lord Brougham offered a competing vision of the practice of law when he observed:

(continued...)

that "[m]embership in the bar is a privilege burdened with conditions. [An attorney is] received into that ancient fellowship for something more than private gain. [He or she becomes] an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice." *People ex rel. Karlin v. Culkin*, 162 N.E. 487, 489 (N.Y. 1928) (citation omitted).

The evidence in this record demonstrates that Mr. Flowers abandoned the balance between zealously representing his clients and the rules for the professional performance of his vocation. He exploited a procedural mechanism to file eighteen frivolous appeals, then failed to prosecute those appeals and allowed them to be dismissed. Mr. Flowers was not pushing the boundaries of the law but was instead abusing its procedural safeguards. That Mr. Flowers hoped that a meritorious ground for relief might arise during this time period bought with a stay created by a frivolous appeal does not alter the nature of the appeal itself. While the members of this Court in addressing ethical complaints will strongly safeguard the zealous representation of clients by attorneys, we will not accept lawyers abandoning their professionalism in the interest of mercenary tactics that violate the requirements of the Rules of Professional Conduct.

**VII.**

Mr. Flowers argues that the hearing panel erred by finding that he violated Tenn. Sup. Ct. R. 8, RPC 1.5(a)[34] by charging an unreasonable fee with regard to the filings with the United States Court of Appeals for the Sixth Circuit. He notes that the record is entirely devoid of any evidence addressing what constitutes a reasonable charge by immigration lawyers either in Memphis or, in fact, anywhere else. As a result, Mr. Flowers argues that any finding that he charged unreasonable fees as to any matter, not just as to filings in the United States Court of Appeals for the Sixth Circuit, is accordingly unsupported by the record.

---

[33](...continued)

An advocate, in the discharge of his duty, knows but one person in the entire world, and that person is his client. To save that client by all means and expedients, and at all hazards and costs to other persons, and, amongst them, to himself, is his first and only duty; and in performing this duty he must not regard the alarm, the torments, the destruction which he may bring upon others.

 2 Trial of Queen Caroline 8 (1821).

[34]Tenn. Sup. Ct. R. 8, RPC 1.5(a) provides that "[a] lawyer's fee and charges for expenses shall be reasonable."

The hearing panel found two violations of Tenn. Sup. Ct. R. 8, RPC 1.5(a). One violation occurred with regard to Mr. Flowers's representation of Ms. Mohamed before the Board of Immigration Appeals; the other involved the eighteen appeals that Mr. Flowers filed in the United States Court of Appeals for the Sixth Circuit. Mr. Flowers's argument is inapplicable to the hearing panel's findings with regard to Ms. Mohamed. These findings were based on Mr. Flowers charging Ms. Mohamed for fees and filing costs for services that he did not perform and then failing to reimburse Ms. Mohamed for her expenditures. It is not necessary to know the standard fee rates in the Memphis area to conclude that this is an improper fee.

As for the filings in the United States Court of Appeals for the Sixth Circuit, the record is deficient with regard to what fees Mr. Flowers actually charged in these cases.[35] Furthermore, Disciplinary Counsel failed to address Mr. Flowers's argument that Disciplinary Counsel should have presented evidence regarding the reasonable fees for these services. Given the dearth of evidence about the fees charged for filing appeals of immigration cases in the United States Court of Appeals for the Sixth Circuit and the Board's failure to address Mr. Flowers's argument, we find that Disciplinary Counsel has not rebutted Mr. Flowers's challenge to the lack of evidence to support the hearing panel's findings regarding Mr. Flowers's violation of Tenn. Sup. Ct. R. 8, RPC 1.5(a) as it relates to his filings in the United States Court of Appeals for the Sixth Circuit.

## VIII.

Mr. Flowers contends that the Hearing Panel erred by finding as an aggravating factor that his clients were vulnerable victims. Tenn. Sup. Ct. R. 9, § 8.4 provides that "[i]n determining the appropriate type of discipline, the hearing panel shall consider the applicable provisions of the ABA Standards for Imposing Lawyer Sanctions." ABA Standards § 9.22(h) includes as an aggravating factor, the "vulnerability of [the] victim." Mr. Flowers insists that the hearing panel's conclusion that his clients were vulnerable victims is inappropriately based upon their inability to speak or write in English, and he argues that this finding "suggests an attitude of condescension and paternalism that is unseemly, unfortunate and unfair."

---

[35] We do not doubt the possibility that somewhere in the record is evidence relating to the fees charged by Mr. Flowers with regard to these filings before the Sixth Circuit. However, the Board has not provided the Court with any assistance as to this matter, and "[j]udges are not like pigs, hunting for truffles buried in" the record. *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Parties are required to provide citation and support identifying where in the record evidence can be found. Tenn. R. App. P. 27.

Mr. Flowers's argument cannot succeed. In addition to his clients' difficulties with writing and speaking in English, Mr. Flowers described the difficult circumstances of many of his clients in his own hearing before the hearing panel. In testimony before the hearing panel, Mr. Flowers recounted the difficult circumstances that many of his clients confronted, requiring them to move often, work long hours with changing schedules, as well as their limited financial resources and lack of transportation or of a solid understanding of the broader culture. Furthermore, Mr. Flowers's clients were seeking assistance in a particularly weighty matter – attempting to remain in the United States and to avoid being deported. We find no error in the hearing panel's conclusion that Mr. Flowers's clients were vulnerable victims. *See In re DeMell*, 589 F.3d 569, 584 (2d Cir. 2009) (concluding that clients of an attorney in a high volume immigration practice similar to Mr. Flowers's practice were vulnerable victims under ABA Standards § 9.22(h)).

## IX.

Mr. Flowers argues that the hearing panel improperly leapt from his admission of facts set forth in Disciplinary Counsel's statement of undisputed material facts to the conclusion that those facts actually established violations of the Rules of Professional Conduct. Clarifying any ambiguity regarding this contention at oral argument, Mr. Flowers indicated that he is asserting that the record lacks substantial and material evidence to support the hearing panel's findings of violations of the Rules of Professional Conduct beyond those he admitted.

The Board did not present additional witnesses during the proceedings before the hearing panel. Rather, Mr. Flowers and Mr. Thierno Sylla, one of his interpreters, were the only witnesses. Accordingly, Mr. Flowers insists that the only evidence upon which the hearing panel could rely consisted of his admissions, his testimony, and the testimony of Mr. Sylla.

We have already noted that Mr. Flowers made numerous concessions in this Court regarding violations of the Rules of Professional Conduct. He concedes (1) that he violated Tenn. Sup. Ct. R. 8, RPC 8.1(b) by providing dilatory responses relating to the matters involving Messrs. Mouminy Bah and Pame and Mses. Mohamed and Kadija Jalloh; (2) that he violated Tenn. Sup. Ct. R. 8, RPC 1.15(a) by using a worthless check drawn on an unapproved trust account to reimburse Mr. Ahmed Bah for his unearned attorney's fee; (3) that he violated Tenn. Sup. Ct. R. 8, RPC 1.15(a) by tendering worthless checks to the United States Court of Appeals for the Sixth Circuit; (4) that he failed to file an appeal for Ms. Mohamed and then failed to inform her of his oversight; (5) that he violated Tenn. Sup. Ct. R. 8, RPC 1.3 and 1.4(a), (b) in his representation of Mr. Mouminy Bah; (6) that he

continued to practice law while his law license was suspended; and (7) that he failed to notify his clients and the tribunals before which he practiced that he had been suspended.

Along with these concessions, we have already noted that the trial court set aside the hearing panel's findings that Mr. Flowers violated Tenn. Sup. Ct. R. 8, RPC 1.4(a), (b) with regard to his representation of Ms. Kadija Jalloh and that he violated Tenn. Sup. Ct. R. 8, DR 1-102(A)(1)(5), (6) and 6-101(A)(3) and Tenn. Sup. Ct. R. 8, RPC 3.4(c), 4.4.(a), and 8.4(a), (d) with regard to his representation of Ms. Isata Jalloh. Disciplinary Counsel did not appeal these determinations. Furthermore, based on our independent review of the record, we have concluded that Disciplinary Counsel has failed to counter Mr. Flowers's arguments regarding inadequately communicating with Mr. Pame and charging unreasonable fees for the filings in the United States Court of Appeals for the Sixth Circuit. We therefore set aside the hearing panel's findings with regard to these violations.

Accordingly, we turn our attention to whether the record contains substantial and material evidence to support the hearing panel's findings with regard to the violations that were neither conceded by Mr. Flowers nor set aside by the trial court or this Court. Mr. Flowers's argument is generic and does not direct us to any specific evidentiary shortcomings regarding any particular violation. We have reviewed the March 21, 2007 "Statement of Material Facts not in Dispute in Support of the Board's Motion for Partial Summary Judgment" which was not contemporaneously objected to by Mr. Flowers, the transcript of the June 21, 2007 disciplinary hearing, the hearing panel's August 2, 2007 "Findings of Fact, Conclusions of Law and Judgment," and the trial court's September 17, 2008 memorandum opinion. Having done so, we conclude that the remaining violations are indeed supported by substantial and material evidence.

**X.**

Mr. Flowers finally contends that the one-year suspension of his license to practice law is excessive. Disciplinary Counsel responds that Mr. Flowers's conceded violations are alone sufficient to justify a one-year suspension and that the additional violations serve to bolster the correctness of this sanction.

In determining "an appropriate sanction when an attorney is found to have breached the rules governing his or her profession, we are required to review all of the circumstances of the particular case and also, for the sake of uniformity, sanctions imposed in other cases presenting similar circumstances." *Bd. of Prof'l Responsibility v. Allison*, 284 S.W.3d 316, 327 (Tenn. 2009). We also use the ABA Standards for guidance. Tenn. Sup. Ct. R. 9, § 8.4; *Threadgill v. Bd. of Prof'l Responsibility of Supreme Court*, 299 S.W.3d at 809-10.

Mr. Flowers conducted his large immigration law practice in a manner that exhibited serious incidents of professional neglect, lack of responsiveness once apprised of deficiencies or potential deficiencies in his performance, abuses of the procedural protections of the judicial process, repeated failures to honor the dictates of supervisory professional authorities, repeated failures to communicate with his clients regarding matters of great importance, and repeated failures to maintain his trust account properly.

Under the ABA Standards, "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client."[36] Suspension is also considered appropriate where "[a] lawyer engages in a pattern of neglect [that] causes injury or potential injury to a client."[37] Additionally, "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty as a professional and causes injury or potential injury to a client, the public, or the legal system."[38] Furthermore, suspension is "generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."[39] Mr. Flowers's conduct transgresses each of the aforementioned standards for which suspension of six months or more but less than three years is recommended.[40]

Aggravating factors assist in determining what sanction should be imposed.[41] The hearing panel also found multiple aggravating factors, including, (1) a prior disciplinary offense,[42] (2) a selfish motive by failing to return unearned fees,[43] (3) a pattern of neglect and dilatory conduct constituting multiple offenses,[44] (4) refusal to acknowledge the wrongful

---

[36]ABA Standards § 4.12.

[37]ABA Standards § 4.42(b).

[38]ABA Standards § 7.2.

[39]ABA Standards § 8.2.

[40]ABA Standards § 2.3.

[41]ABA Standards § 9.1.

[42]ABA Standards § 9.22(a).

[43]ABA Standards § 9.22(b).

[44]ABA Standards § 9.22(c).

-24-

nature of his conduct,[45] and (5) an indifference to making restitution.[46]  The Hearing Panel also found that Mr. Flowers's misconduct was committed against vulnerable victims.[47]

Given the variety, number, and severity of the violations committed by Mr. Flowers as well as the aggravating factors present in this case, we find that Mr. Flowers's contention that the hearing panel imposed, and the trial court affirmed, an excessive sanction is without merit.  Simply stated, we find no basis to warrant setting aside or reducing the one-year suspension of Mr. Flowers's license to practice law.

## XI.

For the reasons stated above, we vacate the finding of a violation of Tenn. Sup. Ct. R. 8, RPC 1.4(a), (b) & 8.4(a), (c), (d) with regard to Mr. Flowers's representation of Mr. Pame and of Tenn. Sup. Ct. R. 8, RPC 1.5(a) with regard to Mr. Flowers's filings before the United States Court of Appeals for the Sixth Circuit.  We affirm all the other violations affirmed by the trial court.  Accordingly, we likewise affirm the hearing panel's suspension of Mr. Flowers's license to practice law for one year, its order requiring reimbursement, and the conditions attached to Mr. Flowers's reinstatement.  We also tax the costs of this appeal to Timothy Darnell Flowers and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[45]ABA Standards § 9.22(g).

[46]ABA Standards § 9.22(j).

[47]ABA Standards § 9.22(h).