IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 7, 2019

## COURTNEY P. BRUNETZ v. NEIL A. BRUNETZ

**Appeal from the Circuit Court for Hamilton County**
**No. 13-D-1347      Don R. Ash, Senior Judge**

_____

### No. E2018-01116-COA-R3-CV

_____

This appeal concerns a post-divorce proceeding for contempt. Mother filed a petition for contempt over Father's alleged failure to pay certain expenses. The trial court granted the Mother's petition and found the Father in contempt and awarded Mother attorney's fees. We reverse the trial court's decision ordering Father to pay expenses associated with a parental evaluation ordered by the trial court. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which RICHARD H. DINKINS and JOHN W. MCCLARTY, JJ., joined.

Donald J. Aho, Chattanooga, Tennessee, for the appellant, Neil A. Brunetz.

John R. Morgan, Chattanooga, Tennessee, for the appellee, Courtney P. Brunetz.

### OPINION

#### BACKGROUND

Courtney P. Brunetz ("Mother") and Neil A. Brunetz ("Father") were divorced on October 22, 2013, by final decree of the Circuit Court for Hamilton County, Tennessee. In conjunction with the divorce, a Permanent Parenting Plan Order ("parenting plan") was approved by the trial court relating to Mother and Father's two minor children, who were nine and five years old at the time of the divorce. Mother was designated primary residential parent and Father was awarded 120 days of residential parenting time under

this parenting plan. The parenting plan required all major decisions regarding each child, including educational decisions, non-emergency health care, and extracurricular activities, were to be made jointly by Mother and Father. The plan further provided that should a disagreement arise between Mother and Father, the dispute should be submitted to mediation. According to the parenting plan, the parties could seek judicial intervention if mediation was unsuccessful. Finally, the plan provided that the parties would share the costs of uncovered medical, dental, and school expenses.

On May 25, 2016, Father filed a petition to modify the parenting plan requesting equal parenting time. Following a hearing, the trial court entered an order on June 11, 2017, finding a material change in circumstances to justify modifying the parenting plan. As such, the trial court granted Father an additional ten days of summer parenting time for a total of 130 days. Among other changes, the trial court also modified the parenting plan to provide Mother sole decision making authority for educational decisions and extracurricular activities. The financial provisions of the parenting plan were unaltered by the modification. Father appealed the trial court's judgment to this Court on several grounds: (1) that the trial court abused its discretion in increasing his parenting time only by ten days when an equal division of parenting time was warranted; (2) the trial court erred in its treatment of private school tuition; and (3) "the trial court abused its discretion by *sua sponte* granting Mother the sole decision-making authority with respect to education and extracurricular activities." ***Brunetz v. Brunetz***, No. E2017-01391-COA-R3-CV, 2018 WL 4521023*, at \*3 (Tenn. Ct. App. Sept. 20, 2018) [hereinafter, ***Brunetz I***]. We thereafter affirmed the judgment of the trial court in all respects on September 20, 2018. ***Id.*** at \*10.

On October 10, 2017, while the first appeal was pending, Mother filed a contempt petition against Father. The petition alleged that Father was in willful contempt of the parenting plan by failing to pay private school tuition for their daughter, failing to pay various medical and orthodontic bills,[1] and failing to take the children to their scheduled extracurricular activities during his parenting time in violation of the parenting plan. Mother did not specifically delineate the alleged unpaid expenses in the petition, nor did

---

[1] Specifically, Mother asserted that Father violated the following provision of the parties' parenting plan:

> The parties shall divide the cost of private school tuition at St. Nicholas and whichever secondary private school the children attend through 12th grade, including McCallie, Baylor and/or GPS, and any other incidentals, pro rata according to the percentages derived from their prior year's income. The costs to be divided pro rata include tuition, books, supplies and fees. This obligation will begin in conjunction with the 2014-2015 school year.

The parenting plan further states that "[u]ncovered reasonable and necessary medical, dental and orthodontic expenses, which may include but is not limited to, deductibles or co-payments, eyeglasses, contact lens, routine annual physicals, and counseling will be paid by the parties on a pro rata basis . . . ."

she append any expenses to the petition. Mother asked that a show cause order be entered requiring Father to show cause why he was not in contempt of court and that Father "be punished for his contempt if he be held in contempt." Finally, Mother sought an award of her reasonable attorney's fees. On October 10, 2017, the trial court issued a fiat and a show cause order setting a hearing on the contempt petition.

Subsequently, Father filed a motion to continue, to which Mother objected. Mother argued that the motion should be denied due to the orthodontic care and school tuition being of "significant importance" and because time was of the essence. The court granted the motion to continue. In conjunction with the granting of the motion to continue, Mother and Father also entered into an agreed order. In the agreed order, Father agreed to (1) consent to and pay his pro rata share of the orthodontic care; (2) pay his pro rata share of the tuition; and (3) participate in mediation. At mediation, Father again agreed to pay his share of the orthodontic expenses but no agreements were reached regarding other issues presented in the petition.

After mediation, Mother filed an "Amended Petition for Contempt." In the amended petition, Mother reiterated the allegations contained in her original petition but also asserted that Father withdrew his consent to pay the orthodontic expenses by subsequently calling the orthodontist and informing him that he refused to pay for the expenses.[2] Similar to the original petition, the amended petition did not specifically enumerate the expenses nor attach a summary of expenses with the petition.

On April 5, 2018, Father filed a response in opposition and a motion to dismiss Mother's petition. Father argued that the petition should be dismissed, *inter alia*, because (1) the petition was filed prior to mediation in violation of previous court orders; (2) Mother "continue[d] to violate the Court's orders by making unilateral decisions without [Father's] agreement[;]" (3) Mother, on multiple occasions, violated previous court orders; and (4) Father paid all required child support and the decision to incur additional expenses relating to private school tuition must be made jointly between Mother and Father.

A contempt hearing was held on April 9, 2018. At the hearing, both Mother and Father testified. Mother testified that Father was aware of the orthodontic care since June 2017, as she emailed him regarding the need for care. Father did not respond to this email or any subsequent emails regarding orthodontic care. However, once the agreed order was signed, Mother decided to schedule a visit to the orthodontist due to her son's need for braces. Father, according to Mother, subsequently refused to pay for the orthodontist care, forcing her to pay the entire bill.

---

[2] Father denied he told the orthodontist he would not pay. Instead, he asserts that he only communicated that he and Mother would go to mediation to settle whether he would pay for the expenses.

Father testified that he believed that the braces were merely cosmetic and that Mother unilaterally made the decision to send their son to the orthodontist in violation of the original parenting plan. He also explained that he had not received the orthodontist bill until shortly before trial leaving him with insufficient time to pay for the expenses.

Regarding their daughter's private school tuition, Mother stated that Father made a payment of $500.00 but had yet to pay the remaining balance of approximately $13,000.00 for the current school year. Mother further stated that their daughter's enrollment in private school was on hold until all the tuition was paid.

Father countered that he objected to their daughter being sent to private school four years prior to the hearing. Nevertheless, he stated that he recently contacted the head of the school to pay the tuition in installments, which the head of school responded that the tuition could be dealt with at the end of the year. Therefore, according to Father, their daughter was not in jeopardy of being unenrolled in the school.

After hearing testimony from Mother and Father, the trial court orally granted the Mother's petition for contempt in part, explaining:

> [Father], . . . I should put you in jail today. This is ridiculous. It is completely and totally selfish and ridiculous and I don't understand that. Obviously, you're an excellent attorney. . . . You're with one of the premier firms in the country and to play this game just makes no sense to me, to be so disrespectful. You may hate her. That's fine. Hate her, but if it weren't for her, you wouldn't have these children. Half of those children are her, so to hate her, that means you hate half the kids, too, and this pattern of behavior is outrageous.

As such, the trial court orally found Father in contempt for failure to pay medical bills and school activity fees. With regard to the private school tuition and the orthodontic expenses, the trial court declined to find Father in contempt, but ruled that Father was indeed responsible for these expenses and that they should be paid within thirty days on penalty of contempt. The trial court further ruled that Mother was entitled to attorney's fees and that the issue would be decided following the filing of an attorney's fees affidavit by Mother's counsel.

After the hearing but before the final order was entered, Father filed a supplemental response to the amended petition in which he alleged that Mother did not specifically outline the expenses she alleged were owed along with the petition for contempt or the amended petition. According to Father, Mother's failure to produce a list of expenses prior to trial left Father with insufficient "time to investigate the expenses submitted." Father also asserted numerous expenses he claims he was not required to pay, including a court-ordered parental evaluation, an eye exam and eyeglasses for their

son, which was "previously submitted . . . to the Court and [Father] was not ordered to pay the expenses," and "school activity expenses."

The trial court apparently rejected the arguments in Father's supplemental response through the entry of a final order entered on June 1, 2018. Specifically, the trial court found that Father was in willful contempt for not paying his share of the children's medical expenses, and therefore ordered Father to pay these expenses in the amount of $1,103.80. Unlike its oral ruling, however, the trial court's written order did not find Father in contempt for his failure to pay school activity expenses. While not holding Father in contempt for failing to pay these expenses, the trial court did order Father to pay the following additional expenses within thirty days of April 9, 2018 or else be "incarcerated for his contempt": (1) $2,995.56 in school activity expenses; (2) $3,646.50 in orthodontic bills; and (3) $13,157.12 in private school tuition. Finally, the trial court awarded Mother $4,000.00 in attorney's fees. Father filed a timely notice of appeal.

## ISSUES PRESENTED

Father presents the following issues on appeal, which are restated as follows:

1. Whether the trial court erred in holding Father in contempt.
2. Whether the trial court erred in requiring Father to pay certain expenses identified in the contempt order.
3. Whether the trial court erred by ordering Father to make the payments outlined in the order within thirty days when Father had previously made "arrangements" to pay the expenses.
4. Whether the trial court erred in awarding Mother attorney's fees.

In the posture of appellee, Mother seeks an award of attorney's fees for defending against a frivolous appeal.

## DISCUSSION

Tennessee courts have the power to punish for contempt. Tenn. Code Ann. § 16-1-102. "The punishment for contempt may be by fine or by imprisonment, or both." Tenn. Code Ann. § 29-9-103. Contempt proceedings under Tennessee law fall within two categories—criminal contempt or civil contempt. **Black v. Blount**, 938 S.W.2d 394, 398 (Tenn. 1996); **Cremeens v. Cremeens**, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at *6 (Tenn. Ct. App. July 24, 2015). Here, neither Mother nor the trial court specified the type of contempt at issue; therefore, it is necessary to determine whether the contempt was criminal or civil in nature.

"Criminal contempt is used to preserve the power and vindicate the dignity and authority of the law as well as to preserve the court as an organ of society." **Overnite**

***Transp. Co. v. Teamsters Local Union No. 480***, 172 S.W.3d 507, 510 (Tenn. 2005) (quoting ***Black v. Blount***, 938 S.W.2d 394, 398 (Tenn. 1996)) (internal quotation marks omitted). Sanctions for criminal contempt "are designed to punish past behavior rather than coerce compliance with a court's order or influence future behavior." ***Cremeens***, 2015 WL 4511921, at *6. Punishment for criminal contempt must be served regardless of whether the contemnor later complies with the court order. ***State ex rel. Farris v. Bryant***, No. E2008-02597-COA-R3-CV, 2011 WL 676162, at *5 (Tenn. Ct. App. Feb. 24, 2011).

Unlike criminal contempt, civil contempt is not intended to punish the contemnor but to "benefit a private litigant." ***Cremeens***, 2015 WL 4511921, at *7. "Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights." ***Black***, 938 S.W.2d at 398. Despite the term "civil," a court may use incarceration to compel the contemnor's performance. ***State ex rel. Farris***, 2011 WL 676162, at *5. If the contemnor complies with the court order, thereby remedying the harm to the private litigant, the contempt is purged and the contemnor will not be incarcerated. ***Ahern v. Ahern***, 15 S.W.3d 73, 79 (Tenn. 2000). The type of contempt contemplated by both Mother's petition and the trial court's order is clearly civil in nature. Father was ordered to pay his pro rata share of expenses Mother incurred within thirty days or face incarceration. Moreover, the trial court's order allowed Father to purge his contempt by paying the expenses. *See **Adkisson v. Adkisson***, No. E2012-00174-COA-R3-CV, 2013 WL 936369, at *7 (Tenn. Ct. App. Mar. 11, 2013) (stating that conditional payment "suggests that the trial court was holding the father in civil contempt").

Civil contempt may involve the failure to perform an act previously ordered by the court, see Tenn. Code Ann. § 29-9-104,[3] or the performance of a forbidden act. *See* Tenn. Code Ann. § 29-9-105.[4] The Tennessee Supreme Court explained the four essential elements of a successful civil contempt claim as follows:

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and

---

[3] Section 29-9-104 provides as follows:

(a) If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, the person may be imprisoned until such person performs it.
(b) The person or if same be a corporation, then such person or corporation can be separately fined, as authorized by law, for each day it is in contempt until it performs the act or pays the damages ordered by the court.

[4] Section 29-9-105 provides as follows: "If the contempt consists in the performance of a forbidden act, the person may be imprisoned until the act is rectified by placing matters and person in status quo, or by the payment of damages."

- 6 -

unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 354–55 (Tenn. 2008). After determining that a person before the court has willfully violated a lawful and sufficiently clear order, the court may, in its discretion, hold the person in civil contempt. *Id.* at 358 (citing *Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964)). The court's decision is entitled to great weight; therefore, we review the trial court's decision under the abuse of discretion standard. *Konvalinka*, 249 S.W.3d at 358 (citing *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993); *Hooks v. Hooks*, 8 Tenn. Civ. App. (Higgins) 507, 508 (Tenn. Ct. App. 1918)). Consequently, we are not permitted to substitute our own judgment for that of the court whose decision is being reviewed. *Konvalinka*, 249 S.W.3d at 358 (citing *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

In this case, the trial court's written order finds Father in contempt only with regard to his failure to pay medical expenses.[5] Despite this fact, the trial court also ordered Father to pay certain expenses related to private school tuition, school activity expenses, and orthodontic treatment. A finding of contempt, however, "is not a prerequisite to a trial court's ability to enforce its orders." *Wilkinson v. Wilkinson*, No. W2012-00509-COA-R3-CV, 2013 WL 614708, at *5 (Tenn. Ct. App. Feb. 19, 2013) (citing *Dodd v. Dodd*, No. M2011-02147-COA-R3-CV, 2012 WL 3193339, at *4 (Tenn. Ct. App. Aug. 6, 2012 ) ("Father also takes issue with the money judgments the trial court awarded to Mother, which, he asserts, flow from the trial court's erroneous findings of civil contempt. As explained in the preceding section, we have concluded Father was not found to be in civil contempt. However, that conclusion does not undermine the propriety of the money judgments awarded to Mother."). Here, Father raises several arguments both relative to the contempt finding and to the order requiring Father to pay certain expenses. We consider each argument in turn.

## I.

---

[5] As previously discussed, the trial court's written order did not find Father in contempt for failure to pay school expenses, unlike the trial court's oral ruling. We resolve any ambiguity in favor of the trial court's written ruling. *Cf. Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015) ("It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts—and that the appellate court reviews the trial court's written orders."). As such, we do not interpret the trial court's ultimate ruling as finding Father in contempt with regard to any educational expenses.

As an initial matter, Father argues that the trial court erred by signing and issuing a fiat and show cause order prior to the filing of Mother's contempt petition, which Father asserts resulted from an ex parte communication. Father's argument fails in several respects. First, Father's argument with regard to this issue is completely unsupported by any relevant case law, as required by the rules applicable to this appeal. *See* Tenn. R. App. P. 27 (outlining the requirements of appellate briefs); Tenn. R. Ct. App. 6 (same). Moreover, Father does not in any way state what he believes is the proper remedy for this purported violation. In our view, the proper remedy when the trial court engages in an impermissible ex parte communication is to file a motion to recuse the trial judge pursuant to Rule 10B of the Tennessee Rules of the Supreme Court. *See generally* Tenn. R. Sup. Ct. 10B. Despite the facts regarding this issue being known to Father prior to this appeal, he filed no motion to recuse the trial court. Indeed, from our review of the record, the alleged ex parte communication was never raised in any fashion in the trial court. As such, it is waived. *See*, *e.g., **Lofton v. Lofton***, 345 S.W.3d 913, 917 (Tenn. Ct. App. 2008) ("Because Mr. Lofton did not file a motion for recusal, we would usually hold that he has waived such right in conjunction with the hearings before the trial court."); ***Wright v. Pate***, 117 S.W.3d 774, 777 (Tenn. Ct. App. 2002) ("Because Appellant has filed no motion for recusal, we must hold that Appellant has waived such right in conjunction with the January 30, 2002 hearing and subsequent Order filed February 13, 2002."); *see also **PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Mabry***, 402 S.W.3d 654, 660 (Tenn. Ct. App. 2012) (citing ***Waters v Farr***, 291 S.W.3d 873, 918 (Tenn. 2009)) ("It is well settled that issues not raised at the trial level are considered waived on appeal.").

## II.

Father next argues that the trial court erred in granting the contempt petition where Mother filed her petition prior to seeking mediation on the issues. The parties' parenting plan contains a provision requiring that disputes be submitted first to mediation prior to initiation of court proceedings. Although Mother did not seek mediation prior to the filing of her contempt petition, there is no dispute that the parties engaged in mediation subsequent to the filing of the petition and that all issues were unable to be resolved.[6]

Again, Father cites no law in support of his theory that Mother's failure to seek mediation should be fatal to her contempt petition in spite of undisputed evidence that the parties engaged in unsuccessful mediation prior to the final hearing on the petition. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." ***Sneed v. Bd. of Prof'l Responsibility of Supreme Court***, 301 S.W.3d 603, 615 (Tenn. 2010). Additionally, the Tennessee Rules of Appellate Procedure mandate that "A final

---

[6] Indeed, even though Father apparently agreed following mediation to authorize orthodontic care, as he had previously agreed to do in the prior consent order, as discussed below, he again argued that he was not required to pay those expenses at the contempt hearing.

judgment . . . shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b). Father has cited no law in support of his argument and has not shown that he was in any way prejudiced by the order of events that took place in this case. Accordingly, this issue is without merit.

## III.

Father next raises several arguments concerning the expenses actually ordered to be paid by Father. As an initial matter, Father contends that the trial court erred in ordering him to pay expenses because the expenses were not sufficiently identified prior to trial. Mother filed her initial contempt petition on October 10, 2017, and an amended petition on March 8, 2018. Both petitions alleged that Father was in contempt for failure to pay private school tuition, orthodontic expenses, medical expenses, and school expenses. Although the petition did not specifically state the amounts attributable to each expense, Mother testified without dispute that she sent Father notice of the outstanding expenses on at least a quarterly basis. Like many of his other arguments, Father cites no legal authority to support his argument that this notice was deficient. In fact, "[c]ivil contempt only requires that the contemnor be notified of the allegation and be given the opportunity to respond." **State ex rel. Flowers**, 209 S.W.3d at 611 (citing **Black**, 938 S.W.2d at 398.). While the specific expense amounts were not identified in the petition, we conclude that the petitions at issue sufficiently apprised Father of the allegations against him and that Father had sufficient notice concerning the unpaid expenses through Mother's timely notifications. Moreover, Father waited until two business days before the scheduled trial to object to the lack of specificity in the contempt petition; at this time, the original petition had been pending for nearly six months, the parties had engaged in mediation concerning the expenses, and the contempt hearing had been continued on Father's request. Considering the totality of the circumstances, this issue is without merit.

## IV.

Next, we address Father's central argument in this appeal—that he should not be required to pay certain expenses because they were incurred over his objection or otherwise in violation of the joint decision-making provisions of the original parenting plan. In support, Father cites this Court's opinion in **Pua-Vines v. Vines**, No. E2016-02472-COA-R3-CV, 2017 WL 3283415 (Tenn. Ct. App. May 23, 2017), which involved whether a father should be required to pay private school tuition when the mother unilaterally moved the child to a more expensive private school. **Id.** at *4–*6. In that situation, we held that the father was required to pay only what he had originally agreed to pay in the parenting plan—one-half of the tuition at the less expensive school. **Id.** at *6. The mother was therefore required to shoulder the remaining expenses incurred due to the change in schools. **Id.** To hold otherwise, we explained, would be to "preclud[e] [the f]ather from the joint decision-making process" enshrined in the parties' parenting plan. **Id.** Father argues that the trial court's order likewise deprived him of his right to

joint decision-making by requiring him to pay certain obligations with which he did not agree.

*Pua-Vines*, however, simply does not support Father's argument in this case. In *Pua-Vines*, the trial court's order resulted in the father being required to pay more than he originally agreed. In reversing the trial court's order, this Court simply reinstated the obligation to which the father had previously bound himself. *Id.* As explained below, the trial court's order in this case simply enforces the obligation that Father himself agreed to both in the original divorce and during the pendency of this contempt proceeding. As such, the trial court's order does not run afoul of the rule expressed in *Pua-Vines*.

Unlike the situation in *Pua-Vines*, the bulk of the issues in this case result from Father's conduct in agreeing to pay certain expenses and then, unilaterally and without justification, revoking his agreement. This circumstance is not isolated but has occurred on multiple occasions throughout this case. We first consider the orthodontic treatment. There is no dispute that the parties' parenting plan requires that the parties share in the costs of uncovered reasonable and necessary orthodontic expenses. Prior to the filing of the contempt petition, Father objected to certain orthodontic treatment for one of the children on the ground that the treatment was merely "cosmetic." Following the filing of the contempt petition, however, Father entered into an agreed order in which he expressly agreed to pay for the orthodontic care at issue and the outstanding private school tuition.[7] The order further provided that the parties would attend mediation. Father did not pay the expenses at that time, however; as such, Mother again obtained his agreement to pay the expenses following mediation, as evidenced by an authorization form signed by Father on February 1, 2018.[8] Father, however, still had not paid the balance for the orthodontic work by time of trial. Finally, at the trial of this cause, Mother, her counsel, and even Father's counsel were under the belief that Father was now agreeing to pay for his share of both the private school tuition and the orthodontic care.[9] A little over a month following the hearing, however, Father filed a supplemental response to Mother's contempt petition again asserting that he should not be required to pay for orthodontic

---

[7] The consent order contains the following provision: "Nothing herein shall be deemed to prejudice any claims Defendant may have on any appeal of any order entered in this action or under the parenting plan or child support order in place." Father's appellate brief does not cite this provision and does not argue that this provision has any relevance to the issues presented in this case. As such, we will not consider this provision as relevant to the issues presented with regard to Mother's contempt petition. *See generally* **Sneed**, 301 S.W.3d at 615 (noting that appellate courts will not construct a party's argument).

[8] The form states that Father "authorize[s] the [orthodontist] to schedule and perform orthodontic treatment for [my] minor child . . . , and further acknowledge[s] my obligation to pay my pro rata share of the cost in accordance with previous orders of the Court."

[9] Specifically, at the beginning of trial, Father's counsel stated that "we're announcing that the St. Nicholas tuition issue with regard to the tuition in arrears has been taken care of and the orthodontic issue has also been taken care of."

treatment because he did not agree to it.[10] He likewise continues to deny his obligation to pay these expenses in this appeal.

The same is true of the private school tuition. In this case, the parties were divorced pursuant to an agreed parenting plan. At the time of the divorce, the children were already attending private school, as evidenced by the temporary parenting plan proposed by Mother in the divorce action, as well as letters contained in the record. Although there appears to have been some disagreement about Father's input in educational decisions during the divorce negotiations, the parenting plan eventually agreed to by the parties contains the following language:

> It is contemplated at this time that the children will attend Baylor, McCallie or GPS; however, as otherwise set forth in this plan, the parties will together make these decisions at the appropriate time and with both parties reserving the right to engage mediation or court intervention regarding any disagreement, circumstance or related issues which may arise in the future. The parties shall divide the cost of private school tuition at St. Nicholas and whichever secondary private school the children attend through 12th grade, including McCallie, Baylor and/or GPS, and any other incidentals, pro rata according to the percentages derived from their prior year's income. The costs to be divided pro rata include tuition, books, supplies and fees. This obligation will begin in conjunction with the 2014-2015 school year.

Father argues that this language provides him with the option of withdrawing his consent to the private schooling of the children at any time. We disagree. Although we agree that the above provision is somewhat unclear,[11] we must conclude that the children's continued attendance at private school is clearly contemplated by the language of the parenting plan. Likewise, the parties' marital dissolution agreement specifically states that the child support award "includes an upward deviation associated with the children's private school tuition." Taken together, these documents show that the parties indeed contemplated private school attendance at the time of the divorce. To hold that Father could withdraw his consent from the private school tuition at any time subsequent to this agreement would allow Father to unilaterally alter the children's education in the precise manner that he argues the trial court has allowed Mother to do. In this case, however, Mother has done nothing to alter the educational landscape that was put in place in the initial parenting plan. As such, this case is simply not analogous to **Pua-Vines**. Additionally, nothing in the record on appeal suggests that Father complied with his obligation under this provision of the parenting plan to seek mediation or court-intervention regarding a change in the children's education; again, he argues that Mother must strictly comply with the procedural requirements of the parenting plan while

---

[10] The response also stated that he only paid his portion of the tuition "under protest."

[11] Importantly, the trial court did not find Father in civil contempt for his failure to pay private school tuition.

- 11 -

apparently exempting himself from those requirements. As such, Father's assertion that the choice to send the children to private school was an "educational decision . . . unilaterally made by Mother" is simply not correct.[12]

Father's agreement to pay the private school tuition is not limited to the initial parenting plan and marital dissolution agreement, however. Instead, Father has variously agreed and not agreed to pay the outstanding private school tuition at different points throughout this record. For example, on December 12, 2017, Father entered into a consent order that provided that he would pay the youngest child's private school tuition. By the time of trial, however, Father still had not paid the private school tuition as agreed. At the beginning of trial, Father's counsel, announced that Father had agreed to pay the outstanding private school tuition. During his testimony, however, Father insisted that one of the parties' children should go to public school due to Mother's move into a better school district. Following trial, Father also filed a supplemental response to the contempt petition again asserting that he should not be required to pay the tuition. Now, Father again objects to the payment of this tuition, raising arguments concerning *inter alia*, the fact that the private school tuition was not included as an upward deviation in the child support worksheet attached to the original parenting plan.[13] Given Father's repeated agreement to these expenses and his failure to seek proper modification of the parenting plan to alter any of the obligations contained therein, any argument that

_____

[12] Moreover, we note that at the time that Mother filed her contempt petition, the parties were not operating under the initial parenting plan, but under the plan implemented following Father's modification petition. As previously discussed, on June 11, 2017, the trial court entered an amended parenting plan that provided Mother with sole decision-making authority over educational decisions. Mother's contempt petition and amended contempt petition both note that the plan was modified, but that Father's obligations to pay expenses were not altered by the parenting plan. The modified plan was not stayed pending appeal. *See* Tenn. R. Civ. P. 62.01 ("[I]n actions that . . . change or otherwise affect the custody of a minor child, an interlocutory or final judgment shall not be stayed after entry unless otherwise ordered by the court and upon such terms as to bond or otherwise as it deems proper to secure the other party."); Tenn. R. Civ. P. 62.03 ("When an appeal is taken from an interlocutory or final judgment in actions specified in Rule 62.01 or in actions for alimony or child support, the court in its discretion may suspend relief or grant whatever additional or modified relief is deemed appropriate during the pendency of the appeal and upon such terms as to bond or otherwise as it deems proper to secure the other party."). Moreover, the Tennessee Supreme Court has made clear that even "[e]rroneous orders must be followed until they are reversed." *Konvalinka*, 249 S.W.3d at 355 (citing *Blair v. Nelson*, 67 Tenn. (8 Baxt.) 1, 5 (1874)). As such, the modified parenting plan allowing Mother sole decision-making authority over education decisions was the operative parenting plan for all events that took place after June 11, 2017. The school tuition at issue involves the 2017-2018 school year, which began well after the effective date of the modified parenting plan. Regardless, under either plan, the trial court did not err in ordering Father to pay the private school tuition.

[13] Father raises this argument in support of his contention that he should not be required to pay this expense, asserting that he has overpaid approximately $70,000.00 in child support since the date of the divorce. Father, however, is a licensed attorney and was represented by counsel when he agreed to this financial arrangement. Even more importantly, nowhere in the pleadings filed in the trial court did Father ask that child support be recalculated to properly take into account the upward deviation from child support created by the payment of private school tuition.

Father's stated objections to the private schooling of one child defeat Mother's contempt petition based on Father's failure to pay these expenses is unpersuasive.

In sum, Father has agreed on multiple occasions to pay for both private school tuition and the orthodontic care at issue. Despite these agreements, by the time of trial, Father had yet to pay these particular expenses. Nothing in the record suggests that the care was unreasonable or excessive or that any of the expenses are beyond Father's means.[14] Instead, it appears that Father voluntarily chose not to pay these expenses without any proper justification. The fact that the initial parenting plan gave Father joint authority to make major decisions regarding non-emergency medical care and education does not provide Father carte blanche to repeatedly agree to pay these reasonable expenses only to revoke his consent at a later date. Moreover, Father's authority to make joint educational decisions does not allow him the right to unilaterally and extrajudicially alter the parties' agreement to place the children in private school and share in the tuition. The trial court therefore did not err in requiring Father to pay these expenses.

The evidence also does not support Father's assertion that he objected to any major decisions regarding medical treatment on behalf of the children.[15] Mother testified that she informed Father of medical appointments and generally received no response from Father. At trial, Father did not testify that he objected to any specific medical treatment with regard to the children. His argument on appeal is essentially that he should not be required to pay for any medical expenses, reasonable or otherwise, that he did not affirmatively and expressly agree to pay, as such would deprive him of his right to make joint decisions concerning the children. We disagree.

While the parties shared joint-decision making regarding "Major" non-emergency medical care in the original parenting plan, the parenting plan makes clear that general day-to-day decisions regarding medical care are left to the discretion of the parent with whom the child is residing at the time the decision is made. The parenting plan also provides that Father is responsible for his share of all reasonable and necessary medical expenses, not just those expenses with which he expressed his prior approval. From our review, the medical expenses, which relate to sinus infections, basic dental care, lice treatments, prescription medicines, and eye glasses, are of the type of day-to-day decisions that each parent is entitled to make without the input of the other parent. The fact that Mother did not obtain Father's express approval of each and every expense prior to incurring the expense is therefore irrelevant in this particular case.[16] Moreover, we

---

[14] Father contended at trial that some of the orthodontic care was merely cosmetic and therefore unnecessary. Mother disputed this characterization, citing a letter from the orthodontist. In any event, there is no dispute that Father is well able to share in the costs of this care, but apparently believed he should not be required to pay for any services to improve the child's teeth that are not strictly required to maintain health.

[15] In this regard, we exclude issues related to orthodontic care, which Father did object to, but which are resolved *supra*.

[16] We can certainly foresee a situation wherein the medical treatment or costs were unreasonable

disagree that Father can avoid his obligation to pay for the medical expenses of the children simply by refusing to expressly consent to the treatment, or even by objecting to treatment when the treatment is reasonable and necessary. Simply put, Father should not be able to avoid his financial obligations by refusing to participate in the parenting of the children and/or choosing to deprive the children of normal medical care.[17] Father's position with regard to the bulk of the medical expenses is therefore unreasonable.

Father was clearly ordered to pay medical expenses in the original parenting plan to which Father undisputedly agreed. *See **Konvalinka***, 249 S.W.3d at 354 (requiring that the order be clear and unambiguous). Mother's testimony was undisputed that she provided notice to Father of each and every expense on at least a quarterly basis. There is simply nothing in the record to show that the medical expenses were not necessary or reasonable under the circumstances.[18] Despite these facts, Father willfully refused to pay the expenses despite his ability to do so. ***Id.*** at 355 (requiring that the party "actually disobeyed or otherwise resisted the order" and that the violation must be willful); *see also **State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Tr.***, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006) ("Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent."). As such, the trial court did not err in holding Father in contempt based on his failure to pay medical expenses.

### V.

Father also argues that some of the expenses submitted by Mother for medical expenses and school expenses were not the type of expenses that Father was ordered to pay in the parenting plan. We do agree that some of the medical expenses included charges that were not incurred on behalf of the minor children. Here, the total of $1,103.87 in medical expenses clearly includes an amount for a parental evaluation that had been ordered by the trial court. The parties' parenting plan requires that Father pay a pro rata share of "reasonable and necessary medical, dental and orthodontic expenses" for the children. Moreover, Mother's amended contempt petition seeks only payment for "medical and dental expenses for the benefit of both minor children[.]" We agree with Father's contention that the parental evaluation should not be included in the medical

---

under the circumstances, causing another party to object. That situation is not present in this case; Father points to no evidence to show that the medical treatment here was unreasonable.

[17] For example, it is generally absurd to believe that Mother would decline to provide the children necessary eye glasses simply because Father did not expressly approve of such an expense or even objected to the expenditure. We doubt that even Father believes this. Instead, it appears that by requiring Mother to obtain care without his approval, Father believes he can force Mother to shoulder the burden of providing medical care for the children. Such a result is clearly not contemplated by the parties' parenting plan and we refuse to endorse it.

[18] While Father's supplemental response stated that the expenses related to eye glasses were "incurred without [Father's] agreement," he did not suggest in the trial court that the eye glasses were unnecessary.

expenses incurred on behalf of the minor children. As such, the trial court erred in including this amount in its award to Mother.

We cannot agree, however, that Father has met his burden to show that the trial court erred in ordering him to pay the requested "school expenses." Father's argument on this issue is as follows:

> Other expenses submitted by Petitioner as school expenses were in fact not school expenses, but extra-curricular activity expenses, for which the court found Father not liable. The court made no determination of whether expenses were agreed to or reasonable, but simply held Father in contempt without determining whether Father had agreed to the expenses.

Father again cites no law in support of this argument nor is this portion of his argument supported by appropriate references to the record. *See* Tenn. R. App. P. 27(a)(7). Moreover, Father's argument regarding this issue can be described as nothing more than conclusory, as Father fails to specify which expenses are objectionable. As such, we decline to address it. *See **Sneed***, 301 S.W.3d at 615. Accordingly, the trial court did not err in ordering Father to pay the "school expenses" requested by Mother.

## VI.

Father next contends that the trial court erred in requiring him to pay amounts that the trial court had previously declined to order Father to pay. Once again, Father's argument in this regard is completely unsupported by relevant legal authority. *See* Tenn. R. App. P. 27(a)(7). This section of Father's brief is also not supported by appropriate references to the record. For example, in support of his assertion that Mother submitted certain expenses to the court in the earlier proceeding, Father cites only to his own supplemental response filed following the contempt hearing at issue. We decline to comb the record to find support for Father's assertions. *See **Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC***, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at *17 (Tenn. Ct. App. Aug. 6, 2018), *perm. app. denied* (Tenn. Jan. 17, 2019) (citing ***Flowers v. Bd. of Professional Responsibility***, 314 S.W.3d 882, 899 n.35 (Tenn. 2010) ("'[J]udges are not like pigs, hunting for truffles' that may be buried in the record, . . . or, for that matter, in the parties' briefs on appeal.")) ("It is not this Court's duty to comb through the appellate record to find support for an appellant's assertions of error."). As such, we conclude that this argument is waived. *See **Sneed***, 301 S.W.3d at 615.

## VII.

Father next argues that the trial court erred in requiring Father to pay certain expenses within thirty days of the hearing date given: (1) the sixty day delay in the entry of the written order, preventing him from appealing the order; and (2) the fact that Father had made payment arrangements to satisfy the balances. We cannot conclude that the trial court committed reversible error. It is true that the trial court's written order was entered

- 15 -

approximately sixty days following its oral ruling. Both the trial court's oral ruling and written order make clear, however, that Father was to pay the expenses in the thirty days following the trial court's oral ruling. Again, Father cites no law to suggest that the delayed entry of the final order in this case was in error or that it resulted in prejudice to him, particularly given that we have now affirmed the bulk of the expenses awarded by the trial court in this case. Moreover, it is unclear what effect an earlier entry of a final judgment would have had in this case, as the final judgment was not stayed pending appeal. Given Father's failure to cite law in support of his argument or to make clear what specific prejudice he suffered from this alleged error, we must conclude that Father has not met his burden to show a reversible error based on the delay in the entry of the written order. *See* Tenn. R. App. P. 36(b).

We also discern no error in the trial court's decision to order Father to pay these expenses within thirty days despite his testimony that he had made arrangements to pay the expenses in installments. As detailed above, Father has engaged in a pattern of agreeing to pay expenses only to withdraw his agreement at a later date. Father's testimony that he would pay the amounts pursuant to a payment plan already in place therefore lacked credibility and the trial court was free to order a different payment scheme under these circumstances. *See* ***Rice v. Rice***, 983 S.W.2d 680, 682 (Tenn. Ct. App. 1998) (citing ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)) ("[T]he trial court is in the best position to assess the credibility of the witnesses; accordingly, such credibility determinations are entitled to great weight on appeal."). Here, there is no dispute that Father has the ability to pay the amounts as ordered by the trial court. As such, the trial court did not err in ordering Father to do so.

## VIII.

Finally, Father argues that the trial court erred in awarding Mother attorney's fees because "[t]he trial court's finding of willful contempt was clearly an error." As previously discussed, the trial court did not err in finding Father in contempt or in ordering Father to pay certain unpaid expenses. This Court has previously approved of the award of damages in a civil contempt proceeding brought under Tennessee Code Annotated section 29-9-104. *See* ***Boren v. Hill Boren, P.C.***, No. W2017-02383-COA-R3-CV, 2018 WL 5044669, at *8 (Tenn. Ct. App. Oct. 17, 2018) (noting a 2001 amendment to section 29-9-104 that expressly contemplated damages). We have also held that attorney's fees are among the types of compensatory damages that may be awarded in a civil contempt proceeding. ***Cremeens***, 2015 WL 4511921, at *7 ("In the context of civil contempt, an award of attorney's fees is appropriate because it serves to compensate the prevailing party for the expenses incurred to obtain compliance with a court order."). Mother was forced to bring this contempt action in order for Father to comply with his previously agreed upon obligations. Moreover, Father undisputedly has the ability to pay his obligations and the support at issue. As such, we affirm the award of attorney's fees incurred in the trial court.

- 16 -

## IX.

Mother raises one final issue: that she should be awarded her attorney's fees pursuant to Tennessee Code Annotated section 27-1-122. Section 27-1-122 provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"An appeal is frivolous when it has 'no reasonable chance of success' or is 'so utterly devoid of merit as to justify the imposition of a penalty.'" *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009) (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006) (citations omitted)). Father was successful in overturning the trial court's decision to award the costs of a parental evaluation as a medical expense of the children. As such, we decline to award attorney's fees under section 27-1-122.[19]

### CONCLUSION

The judgment of the trial court is reversed with regard to the award of expenses associated with the parental evaluation ordered by the trial court. The trial court's judgment is affirmed in all other respects and this cause is remanded to the trial court for all further proceedings as are necessary and consistent with this opinion. Costs of this appeal are taxed to Appellant Neil A. Brunetz, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[19] Mother cites no other authority for the award of attorney's fees in this appeal. As such, we decline to address whether any other authority would provide support for an award of attorney's fees in this case.