IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 24, 2026 Session

**BENJAMIN MCCURRY v. AGNESS MCCURRY**

**Appeal from the Circuit Court for Washington County**
No. 38147        D. Kelly Thomas, Jr., Senior Judge
_____

**Nos. E2024-00042-COA-R3-CV and E2023-01655-COA-R3-CV**
_____

The trial court found the appellant guilty beyond a reasonable doubt of three charges of criminal contempt. The appellant appeals those criminal contempt findings. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, P.J., E.S., and THOMAS R. FRIERSON, II, J., joined.

Agness McCurry, Austin, Texas, pro se appellant.

Jonathan Skrmetti, Attorney General and Reporter, and Katherine P. Adams, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

Agness McCurry ("Defendant") appeals two criminal contempt judgments entered against her by the Washington County Circuit Court (the "trial court") during an ongoing child custody matter between Defendant and her ex-husband, Benjamin McCurry ("Father"). On September 8, 2022, as part of the custody matter, the trial court ordered as follows:

1. The parents are ordered to take the child to Teresa Fletcher, LMFT for assessment and recommendations. The first appointment shall be scheduled

as quickly as practicable. Father shall make the appointment and communicate the date and time to [Defendant]. . . .

\* \* \*

3. The parties are ordered to participate with Ms. Fletcher to the extent that she requires.

\* \* \*

5. Based on [Defendant's] failure to appear, [F]ather's Motion to Re-Evaluate Defendant's Indigency Status is GRANTED. [Defendant] is order[ed] to provide her last three months of wage statements to the Court, and provide copies to counsel for [F]ather.

A certificate of service attached to the order reflects that it was emailed to Defendant by the trial court clerk on September 8, 2022. Just over five months later, on February 13, 2023, the trial court entered another order providing, in relevant part, as follows:

Parties to Engage with Teresa Fletcher, LMFT

This Court entered an Order [on] September 8, 2022 in which the parties were "ordered to take the child to Teresa Fletcher, LMFT for assessment and recommendations." This has still not occurred because both [F]ather and [Defendant] must participate. This Order remains in effect and the parties shall comply with it. It is also ORDERED that both parties shall contact Ms. Fletcher's office [] regarding when she would like to interview or involve them, and that each party shall cooperate with Ms. Fletcher in her assessment of their family dynamics/family conflict, and to see if the child is or has been harmed by inappropriate behavior by either parent. . . . It is finally ORDERED that each party shall proceed to schedule their appointment with Ms. Fletcher as quickly as possible so that additional information regarding the child and this family may be available at the continued hearing on March 24, 2023. **Each parent shall contact Ms. Fletcher within 24 hours of receiving this Order.**

[Defendant's] Indigency Status and Parties' Income Documentation

Also, in the September 8, 2022 Order [Defendant] was ordered to provide her last three months of wage statements to the Court with copies to counsel for [F]ather. [Defendant] has not complied with this Order. [Defendant] may now comply by providing her most recent three months' worth of pay stubs or wage statements to the Court at the continued hearing

to be held March 24, 2023, and it is again ORDERED that she shall provide this wage documentation at the March 24, 2023 hearing.

In addition, it is ORDERED that each party shall provide the Court with a complete copy of their 2022 income tax return including any forms, schedules or other documents submitted to the IRS. If either party has not filed their 2022 taxes prior to the March 24, 2023 hearing, it is ORDERED that any such party shall bring all W2, 1099, K-1, and any other wage or income documentation related to income earned or received in 2022 to the hearing on March 24, 2023. Upon review of [Defendant's] income the undersigned may review her indigency status. Child support may also be recalculated if there are changes in income or the residential parenting schedule.

**<u>NOTICE</u>**

The parties are admonished that failure to comply with the requirements of this Order relating to scheduling and cooperation with Ms. Fletcher, providing pay stubs, and/or wage statements for the last three months from [Defendant], and providing 2022 tax returns for both parties, may subject such party to being held in contempt of court for willful failure to comply with this Order, following notice and a hearing thereon. A party may be charged by this Court with civil contempt and, if found guilty, held in custody until such time as they comply with the Court's Order. They may be charged with criminal contempt and, if found guilty, sentenced to 10 days in jail for each willful failure to comply with this Court's Order.

A certificate of service attached to the order reflects that it was emailed to Defendant by the trial court's judicial assistant on February 10, 2023.

On February 28, 2023, the judges for the Chancery, Circuit, and Criminal Courts of the First Judicial District, which includes the trial court, entered a standing order (the "Standing Order") that

No one, other than as excepted below, may possess an electronic device within any of the courtrooms of the First Judicial District. In addition, no electronic devices of any kind are permitted in the George Jaynes Justice Center in Washington County or the Carter County Courthouse Annex in Elizabethton. Electronic device includes, but is not limited to, cell phones, laptops, tablets, recording devices of any type and size including any which can record audio, video, sound, or that can broadcast or live-stream.

Individuals are prohibited from capturing photos, audio or video of any court proceedings unless otherwise permitted by order of the presiding judge. A violation of this rule may result in sanctions including confiscation of the device, removal from the courtroom, and/or a finding of criminal contempt of court punishable by fine, incarceration or both.

This prohibition does not apply to licensed attorneys, court reporters, court personnel and employees, and law enforcement personnel. Cell phone and audio-visual recording devices will be permitted for finalization of adoptions, weddings and investiture proceedings. Media access shall be governed by Rule 30 of the Rules of the Supreme Court of the State of Tennessee.

On May 16, 2023, the trial court filed a notice that it was charging Defendant with criminal contempt because she "willfully violated the [February 13, 2023] Order by failing to contact [Ms. Fletcher] as [o]rdered[,]" "by failing to provide the [trial court] with her most recent three months' worth of pay stubs or wage statements at the March 24, 2023 hearing[,]" and "by failing to provide the [trial court] with a complete copy of her 2022 income tax return or all . . . wage and income documentation related to income earned or received in 2022." On May 19, 2023, Defendant filed a notice of filing of a recording that she made of the March 24, 2023 hearing. Thereafter, on June 27, 2023, the trial court filed a second notice that it was charging Defendant with criminal contempt, this time because she "willfully violated the Standing Order [] by surreptitiously making audio recordings during a trial held March 24, 2023, in the Washington County Justice Center" and "during a hearing held June 5, 2023, in the Washington County Justice Center." The trial court appointed a prosecutor to try the criminal contempt charges on behalf of the State of Tennessee.

The trial court heard the criminal contempt charges on December 13, 2023. Defendant was present in the courtroom at the commencement of the proceeding, and the trial court asked her whether she would like to stay in the courtroom during the hearing or move to another room and participate by videoconference. Defendant responded by repeatedly stating that she did not want to participate or be involved in the hearing and did not want to be in the courtroom. Eventually, the trial court instructed the court officer to move Defendant to "the other room," at which time Defendant began repeatedly stating that she did not want to be in the other room. Defendant was moved to the other room and connected to the courtroom by Webex videoconference, at which time she started repeatedly asking the court officer to reduce the volume so she would not have to hear the proceeding, stating that she did not want to face the screen, and stating that she did not want to participate in the hearing. A transcript of the Webex recording reflects that at some point Defendant began physically struggling with the court officer in an attempt to turn down the volume so she would not be able to hear the proceeding:

- 4 -

THE COURT: All right. The record will show that Ms. McCurry is not participating.

DEFENDANT McCURRY: Thank you.

* * *

DEFENDANT McCURRY: Turn down the volume.

UNIDENTIFIED SPEAKER: No.

* * *

UNIDENTIFIED SPEAKER: Don't touch it.

DEFENDANT McCURRY: No. I don't want to participate. Just turn it off.

* * *

DEFENDANT McCURRY: Let me turn.

UNIDENTIFIED SPEAKER: Ma'am, don't grab my hands.

UNIDENTIFIED SPEAKER: Don't grab him.

DEFENDANT McCURRY: I'm turning. Let go of my hand.

UNIDENTIFIED SPEAKER: Don't grab the officer.

Defendant also refused to participate when the trial court attempted to conduct a colloquy to confirm that she understood her constitutional rights:

THE COURT: All right. Ms. McCurry, will you answer any of my questions about your right to a lawyer or what the charges are?

DEFENDANT McCURRY: [Indiscernible]. I don't want to participate. No, I don't.

I'm not answering no goddamn thing, you devil.

THE COURT: All right.

DEFENDANT McCURRY: I rebuke you in the name of Jesus. I'm not answering [indiscernible] from you.

THE COURT: The record will reflect that Ms. McCurry refuses to participate in this hearing.

DEFENDANT McCURRY: Yes. And I don't want to [indiscernible].

THE COURT: She will not answer my questions. I am going to review for her –

DEFENDANT McCURRY: You're a kidnapper. You're a child kidnapper.

THE COURT: – her rights as related to this contempt hearing.

DEFENDANT McCURRY: (Continually overspeaking the Court throughout the following with the phrase:) You're a child kidnapper.

THE COURT: And then when I finish, I will ask her for a response. If she gives me one, then I will take that response.

If she won't, then we will [indiscernible] with the State's evidence and with the hearing. . . .

In other words, you did a very poor job of representing yourself the last time, and I really wish you would let me appoint you a lawyer to help you.

Defendant then began physically engaging with the court officers again and refused to respond to the trial court's attempts to ensure she understood her rights:

THE COURT: I need to ask Ms. McCurry a question.

DEFENDANT McCURRY: No.

UNIDENTIFIED SPEAKER: He needs to ask you a question.

UNIDENTIFIED SPEAKER: Ma'am, I'm going to spray you here in a second.

DEFENDANT McCURRY: No. No. Start spraying me. I want to leave.

* * *

DEFENDANT McCURRY: I don't want to. I don't want to answer nothing. I want to be disruptive.

No, I don't want to be here.

THE COURT: Officers, did — could you all hear what I was telling her?

DEFENDANT McCURRY: No. Nobody's hearing nothing you're saying.

UNIDENTIFIED SPEAKER: No, sir. No, sir, not really anything.

DEFENDANT McCURRY: I don't want to participate.

Yeah, I'm struggling with them right now. I'm being very vocal and I don't want to participate. Nobody can hear anything. I keep yelling at you.

* * *

THE COURT: Ms. McCurry, you insist on not participating.

Is that correct?

DEFENDANT McCURRY: Yes. Yes. That's what I've been trying to tell you.

Yes.

THE COURT: Okay.

DEFENDANT McCURRY: Yes.

THE COURT: So the fact that you have a right to a lawyer and a right to plead "not guilty" and a right to remain silent, you understand all that?

DEFENDANT McCURRY: I don't want to participate. That's what I – I don't want to . . .

THE COURT: Do you understand what I'm telling you about your rights?

DEFENDANT McCURRY: [Indiscernible] punishable by ten days. You can give me full ten days, is what you can do, and I can leave.

How about that? . . .

> * * *
>
> THE COURT: The record's going to show, Ms. McCurry, that you refused to answer any of my questions.
>
> (Defendant overspeaks continually. Unable to transcribe.)
>
> THE COURT: That I reviewed your rights with you. You wouldn't respond. And all you would do is say that –
>
> DEFENDANT McCURRY: I don't want to participate.

The State began presenting its case and offered to provide Defendant with a copy of eight exhibits it was proffering as evidence; however, Defendant refused to accept the exhibits. No court reporter was present at the hearing, and the transcript in the record is a transcription from the Webex recording. The transcriptionist was unable to transcribe the first portion of the State's case, regarding Defendant's violation of the Standing Order, due to Defendant's repeated verbal outbursts, which made that portion of the proceeding unintelligible. However, the State filed a statement of the evidence pursuant to Tennessee Rule of Appellate Procedure 24 regarding this first portion of the proceeding. The trial court approved the partial hearing transcription and statement of the evidence, finding that "they provide a fair, accurate, and as complete as possible account of what transpired at the criminal contempt hearing."

The State's first witness was Ashley Radford, a deputy clerk with the Washington County Circuit Court Clerk's office. Ms. Radford testified that Defendant was aware of the Standing Order, which prohibited her from possessing a recording device in the courtroom or recording any court proceeding without express permission of the trial court, "because it was posted at all entrances to the courthouse." Moreover, the trial court admitted into evidence a certified copy of a Notice of Appeal that Defendant filed with this Court on March 8, 2023, in which Defendant sought to appeal the Standing Order. Ms. Radford further testified that she was present in the courtroom on March 24, 2023, during a hearing in Defendant's child custody matter. Ms. Radford stated that Defendant was present in the courtroom during that hearing, represented herself, and did not request permission to record the hearing. Ms. Radford explained that the trial court had a Webex video recording of the hearing but that no one, including Defendant, had requested a copy of the video. Nonetheless, on May 19, 2023, Defendant filed as an exhibit in the underlying case, a disc that "contained a surreptitious unofficial audio recording" of the March 24 hearing. Ms. Radford testified that

> [t]his DVD contained an audio recording made by Defendant and is not the same recording as the Webex video recording because unlike the Webex recording, Defendant's voice is prominent and other noises are distant in the

recording. In addition, Defendant's recording starts prior to the Webex recording and sounds of rustling and/or a muffled microphone can be heard evidencing a device that was placed inside the recording person's clothing where the microphone is rubbing against fabric or clothing at times during the recording.

Ms. Radford testified that during the March 24 hearing, Defendant testified that she did not contact Ms. Fletcher as ordered because "[s]he did not want to spend time with her abuser" and "that she did not want to see someone that was part of a [] conspiracy [] against her." Ms. Radford further testified that Defendant testified during the March 24 hearing that Defendant would not provide her financial records because she was self-employed. The trial court ultimately found that

[t]he proof establishes beyond any doubt that [Defendant] recorded the hearing on the 24th of March without permission and filed a CD on the 23rd [] of May, a copy of that hearing that she had recorded.

And according to the proof, she had no permission to do that. And, in fact, she admitted those things when we had the hearing from criminal court pretty much.

Also she has said on multiple occasions that she refused to go see Teresa Fletcher to have any interviews about her contact with her son and what was in the best interest for her child.

And she also has refused steadfastly to file the income statements that she's been ordered to file three times[.]

Accordingly, the trial court found Defendant guilty beyond a reasonable doubt as to all three charges and sentenced her to serve ten days in jail for each charge. The trial court ordered that the sentences for refusing to contact Ms. Fletcher and refusing to provide her financial records run concurrently to each other, but consecutively to the sentence for her violation of the Standing Order, resulting in an aggregate sentence of twenty days.

Defendant appealed the criminal contempt findings. On September 12, 2024, this Court remanded this case back to the trial court for entry of an order that complies with Tennessee Rule of Civil Procedure 58, as the criminal contempt judgments did not contain certificates of service. The trial court entered corrected final judgments on September 25, 2024. Defendant then filed a motion for relief from judgment in the trial court pursuant to Tennessee Rules of Civil Procedure 59 and 60. The trial court denied Defendant's post-judgment motion on December 20, 2024, finding

Defendant, in her motion, freely and frequently uses the terms "fraud" and "fraudulent," but she has pointed to no actual facts established by the proof in the record to demonstrate or suggest fraud. . . .

The allegations in Defendant's motion reflect a continuing pattern in her filings that shows each time a court does not rule in her favor, Defendant delusionally perceives "fraud," "case fixing and racketeering," and grand criminal conspiracies by multiple agencies of the justice system working against her. . . .

Most of the factual allegations in her motion are entirely irrelevant to the issue of whether Defendant is entitled to relief from the three judgments of contempt against her on December 13, 2023. All of them are completely unsupported by any evidence offered by Defendant. . . .

In support of her argument that she is entitled to a new trial or Rule 60 relief from the judgments finding her guilty of contempt, Defendant asserts that she was deprived of due process during the contempt hearing because she was "deprived of the right to call witnesses or adequately prepare for the proceeding." This is demonstrably false. Defendant was given opportunity to speak and/or call witnesses in her defense, but she repeatedly and adamantly refused to participate at the hearing. The partial transcript of the evidence filed in this case reflects that Defendant stated "I don't want to participate" some eleven times in twelve pages before the court stated, "the record will reflect that Ms. McCurry refuses to participate in this hearing." She also stated, "I'm going to disturb the hearing," that she intended to disrupt the hearing, and that "nobody can hear anything" because "I keep yelling at you."

None of these allegations provides a valid ground for relief under Rule 59 or 60.02.

The trial court clerk filed an Amended Certificate of Service pursuant to Tennessee Rule of Civil Procedure 58 on March 24, 2025. Defendant appeals the criminal contempt findings and the trial court's denial of her post-judgment motion.

## ISSUES

Defendant lists eighteen specific and detailed issues on appeal between her principal and supplemental briefs. However, these issues do not align with the subheadings in the argument section of her brief. The overarching arguments set forth in Defendant's principal brief are as follows:

- 10 -

1. "The contempt judgment for failure to provide wage records should be vacated due to procedural irregularities, judicial and professional misconduct, denial of due process and VAWA confidentiality."

2. "The contempt finding for failing to contact [Ms.] Fletcher must be vacated due to judicial misconduct, impossibility of compliance, and due process violations."

3. "The contempt judgment for recording the March 24, 2023 hearing must be vacated because the recording was protected whistleblowing conduct in furtherance of a federal lawsuit against Judge Wright, and the enforcement was retaliatory, biased and constitutionally deficient."

4. "The trial court's denial of [Defendant's] Rule 59/60 motion was an abuse of discretion and warrants reversal . . . ."

Her supplemental brief raises numerous issues all related to the fact that there is no recording of the child custody hearing that occurred in the trial court on February 7, 2023.

The State, in its role as appellee with respect to the criminal contempt findings, argues that Defendant waived all these issues on appeal by failing to raise them before the trial court.

## DISCUSSION

*a.*

On August 25, 2025, Defendant requested that this Court take judicial notice of numerous documents that have been filed in a federal court case in which Defendant has sued Walmart Inc. and Checkr Inc. She argues that these filings "directly impact the issues presented on appeal and rebut the arguments advanced by the State" because they "demonstrate[] that retaliatory acts affecting [Defendant's] employment and livelihood are directly tied to state-related misconduct that underpins the issues presented in this appeal[;]" "detail[] how [Father's counsel], acting in concert with Tennessee prosecutors, influenced judicial actions, fabricated testimony, and conspired with Walmart/Checkr employees to retaliate against" Defendant; "implicitly confirm[] that [Defendant's] claims are legally cognizable and serious enough to warrant formal resolution" through arbitration (which was requested by Defendant and her co-plaintiff); "underscores [Defendant's] diligence in pursuing lawful remedies, contrary to the State's portrayal of her filings as frivolous[;]" and she argues that Walmart Inc. and Checkr Inc.'s purported concessions that the claims are subject to arbitration "confirms that [Defendant's] federal claims are proceeding on the merits in an appropriate forum and cannot be dismissed as irrelevant to her ongoing appeals." Ultimately, she argues that the allegations in this federal lawsuit

"are highly relevant to rebutting the State's assertion that [Defendant's] constitutional claims in this appeal are 'waived' or 'unsupported.'"

On September 17, 2025, Defendant filed a second request that this Court take judicial notice of various filings that appear to be a portion of the filings she asks this Court to take notice of in her motion filed August 25. In support of this motion, she argues that the filings show that "1) [t]he [criminal contempt charges brought against her] were predicate acts of a RICO conspiracy now recognized in a separate federal proceeding; 2) [t]hey were prosecuted on behalf of [Father's attorney] and [Father], not for legitimate state purposes; [and] 3) [t]hey form part of a broader scheme of retaliation for [Defendant's] exercise of [her] constitutional rights[.]"

Tennessee Rule of Evidence 201 deals with judicial notice of adjudicative facts and provides, in relevant part:

> (b) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
> (c) When Discretionary. A court may take judicial notice whether requested or not.
>
> (d) When Mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

Defendant argues that these documents support her various arguments made in the trial court and on appeal. Although we can take judicial notice of the fact that the proffered documents were filed in federal court, the facts alleged within the various documents are not the type of "fact[s] . . . not subject to reasonable dispute" provided for in Rule 201. Accordingly, we deny the motion.

All other pending motions not specifically addressed herein are denied.

*b.*

As our Supreme Court has explained,

> [a] person charged with criminal contempt is presumed innocent, and guilt must be proven beyond a reasonable doubt. *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn.1996); *Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (1964). Once convicted, however, the contemnor loses the

presumption of innocence and bears the burden of overcoming the presumption of guilt on appeal. *Black*, 938 S.W.2d at 399; *Robinson*, 377 S.W.2d at 912. Thus, appellate courts do not review the evidence in a light favorable to the accused. *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). A conviction will be reversed for insufficient evidence only when the facts in the record, and any inferences that may be drawn therefrom, are insufficient as a matter of law for a rational trier of fact to find the accused guilty of the crime beyond a reasonable doubt. *Black*, 938 S.W.2d at 399; Tenn. R. App. P. 13(e).

*State v. Beeler*, 387 S.W.3d 511, 519 (Tenn. 2012). The three essential elements of criminal contempt are

"'(1) a court order, (2) the defendant's violation of that order, and (3) proof that the defendant willfully violated that order.'" *Pruitt v. Pruitt*, 293 S.W.3d 537, 545 (Tenn. Ct. App. 2008) (citing *Foster v. Foster*, No. M2006-01277-COA-R3-CV, 2007 WL 4530813, at *5 (Tenn. Ct. App. Dec. 20, 2007)). In addition, the plaintiff must show the following four elements: (1) the order allegedly violated was lawful; (2) the order was clear and unambiguous; (3) the individual charged did in fact violate the order; and (4) the individual acted willfully in so violating the order. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008)[.]

*Hill v. Hill*, 682 S.W.3d 184, 210 (Tenn. Ct. App. 2023). "A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties." *Konvalinka*, 249 S.W.3d at 355 (citing *In re Vanvaver*, 12 S.W. 786, 791 (Tenn. 1890); *Churchwell v. Callens*, 252 S.W.2d 131, 136–37 (Tenn. Ct. App. 1952)).

As a threshold issue, the State argues that Defendant waived all the issues that she now raises on appeal by failing to raise those issues in the trial court and refusing to participate in the criminal contempt hearing. "Under Tennessee law, issues raised for the first time on appeal are waived." *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996). Defendant replies that she preserved the issues she now raises by filing a motion for sanctions "challenging the motives of [Father] and [his counsel] to 're-evaluate' her indigency, and legitimacy of therapeutic counseling for the minor child[.]" She also argues that she refused to participate in the criminal contempt hearing "because of long standing patterns by the trial court judges[1] in her case to violate [Defendant's] due process rights

---

[1] At least three trial court judges have presided over the underlying child custody matter at various times. The September 8, 2022 order was entered by Judge J. Edwin Lauderback. At some point, Judge Lauderback recused himself, and the matter was assigned to Senior Judge Thomas J. Wright. Judge Wright entered the February 13, 2023 order and filed the criminal contempt charges at issue in this appeal. Judge

- 13 -

and ignore her motions in favor of her abuser [Father] and his attorney[.]" Moreover, she notes that she was arrested on December 6, 2023, and held without bond until the hearing on December 13, 2023; thus, she argues, she was "deprived the right to call witnesses and prepare for the hearing by default." We address Defendant's purported waiver of each of these issues, in turn, below.

The bulk of Defendant's arguments on appeal consists of collateral attacks on the underlying orders that she was found to have violated. For instance, Defendant argues that the order that she produce her financial information is unlawful because the order resulted from "fraud and professional misconduct" by Father's current and former attorneys and violated Defendant's rights under the Violence Against Women Act ("VAWA"). She similarly argues that the order that she contact Ms. Fletcher is unlawful because it "creat[ed] a procedural imbalance that violated her due process rights" and "demonstrates selective enforcement and judicial bias." Because Defendant raised these issues before the trial court, they have not been waived; however, we need not reach the merits of these arguments. Even if Defendant's arguments were meritorious, "[a]n order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal." *Konvalinka*, 249 S.W.3d at 355 (citing *In re Vanvaver*, 12 S.W. at 791; *Churchwell*, 252 S.W.2d at 137). Erroneous orders "must be followed until they are reversed." *Id.* (citing *Blair v. Nelson*, 67 Tenn. 1, 5 (1874)). It is undisputed that the trial court had jurisdiction over both the subject matter of the case and the parties; accordingly, the orders at issue were lawful orders.

> Since the orders of the Trial Court were not facially invalid for lack of jurisdiction, Defendant was required to obey the orders of the Trial Court, even if erroneous, unless or until they were dissolved by that court or reversed on appeal. Defendant's belief those orders were erroneous does not change the fact that [s]he willfully failed to obey the orders. If simply believing a court order was erroneous constituted a defense to ignoring that order, then most court orders would be ineffectual since a losing party rarely believes the court to be right.

*Frye v. Frye*, 80 S.W.3d 15, 19 (Tenn. Ct. App. 2002).

Defendant also argues that her "financial documentation was already on file" and that the order to produce updated financial information "was not supported by any new evidence of financial change, and failed to explain how that obligation interacted with her existing wage garnishment order." Defendant posits that this purported issue makes the order that she produce her updated financial information ambiguous; however, this is actually just another argument that the order was unlawful. An order is clear and

---

Wright retired on August 31, 2023, and this case was then assigned to Senior Judge D. Kelly Thomas, who ultimately presided over the criminal contempt hearing and ruled on Defendant's post-judgment motion.

unambiguous when it "expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden." *Konvalinka*, 249 S.W.3d at 355 (citations omitted). Conversely, an order is ambiguous when it is "susceptible to more than one reasonable interpretation[.]" *Id.* at 356 (citations omitted). Defendant does not argue that she was confused about what any of the orders required her to do. Moreover, upon diligent review of the orders, we cannot conclude that any of the orders are susceptible to more than one reasonable interpretation. Therefore, the orders were clear and unambiguous.

Finally, Defendant does not dispute that she did in fact violate the orders; however, she argues that certain of her violations were not willful. For criminal contempt purposes, a person willfully violates an order when the person acts intentionally and with a conscious objective or desire to violate such order. *See Beeler*, 387 S.W.3d at 523 (citing *In re Sneed*, 302 S.W.3d 825, 826 n.1 (Tenn. 2010)). Defendant argues that it was impossible for her to comply with the order that she contact Ms. Fletcher because Ms. Fletcher "would not respond to" Defendant. Defendant alleges that she "raised concerns about Ms. Fletcher's refusal to communicate . . . during multiple court appearances." Notably, however, the September 8, 2022 order merely required Defendant to "take the child to [Ms. Fletcher] for assessment and recommendations" and "to participate with Ms. Fletcher to the extent that she requires." Similarly, the February 13, 2023 order required Defendant to "contact Ms. Fletcher's office[,] . . . cooperate with Ms. Fletcher in her assessment[,] . . . schedule [her] appointment with Ms. Fletcher as quickly as possible[,] . . . [and] contact Ms. Fletcher within 24 hours of receiving" the order. As Ms. Radford testified at the criminal contempt hearing, Defendant admitted at the March 24, 2023 hearing that she had not made any attempt to reach out to Ms. Fletcher because she was dissatisfied with the trial court's order that she do so, did not wish to submit to such assessment, and was upset about Father filing an emergency petition for sole custody. This testimony is corroborated by the video and audio recordings of the March 24, 2023 hearing that were admitted as exhibits to the criminal contempt hearing. Whether Ms. Fletcher would have been receptive to this contact by Defendant or responsive to Defendant is of no consequence. Defendant was instructed to contact Ms. Fletcher within twenty-four hours of receiving the February 13 order, and she willfully failed to do so.

Similarly, Defendant argues that her violation of the Standing Order was not willful because "[w]hile that order was technically in effect . . . [Defendant's] conduct constituted protected whistleblower activity, undertaken in support of an active federal civil rights lawsuit[.]" However, there is no indication in the record or in any of Defendant's filings that she raised this issue before the trial court. Accordingly, this issue has been waived. *See Black*, 938 S.W.2d at 403.

For these reasons, we affirm the trial court's findings that Defendant is guilty of all three charges of criminal contempt beyond a reasonable doubt.

- 15 -

*c.*

Next, Defendant argues that Judge Wright's refusal to recuse himself from the child custody matter "rendered all subsequent rulings voidable, including the contempt conviction[s]." Defendant asserts that Judge Wright should have recused himself because "[o]n February 7, 2023, prior to the March 24[, 2023] hearing, Judge Wright ordered [Defendant] arrest[ed] twice in the same day, following her invocation of VAWA protections[,]" because he initiated contempt proceedings against Defendant and because Defendant sued Judge Wright in federal court. Notably, however, this Court has already addressed many of these issues.

In February 2023, Defendant filed a motion to recuse Judge Wright in the underlying child custody matter. The trial court summarized the grounds set forth in Defendant's recusal motion as follows:

> The underlying factual basis for [Defendant's] Motion to Recuse appears to be the fact that she was ordered into custody for contempt of court on two separate occasions during a recent hearing February 7, 2023. . . .
>
> * * *
>
> [Defendant] alleges that she was deprived of Due Process because she was "discriminated against by Judge Wright due to her lawful permanent resident status under VAWA." . . .
>
> * * *
>
> [Defendant] contends that the undersigned has manifested bias and prejudice, and that this "was due to [Defendant's] 'national origin' as a lawful permanent resident under VAWA []."

*McCurry v. McCurry*, No. E2023-00297-COA-T10B-CV, 2023 WL 2591161, at *3–4 (Tenn. Ct. App. Mar. 22, 2023). This Court ultimately affirmed Judge Wright's denial of that recusal motion. *Id.* at *5. Accordingly, Judge Wright did not err by continuing to preside over the child custody matter.

Defendant also made an oral recusal motion at the commencement of the March 24, 2023 hearing based upon the fact that she had recently sued Judge Wright in federal court. However, there is no indication in the record or in Defendant's appellate filings that she ever filed a written recusal motion setting forth such ground. Tennessee Supreme Court Rule 10B, section 1.01 requires that recusal requests be made "by a *written motion* filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal." (Emphasis added). "Therefore, a claim of judicial bias may be deemed

waived if a litigant . . . fails to file a written recusal motion[.]" *Cook v. State*, 606 S.W.3d 247, 254 (Tenn. 2020) (citing *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009)). Because Defendant never filed a written motion with the trial court for Judge Wright's recusal based upon her suing him in federal court, this issue has been waived.

*d.*

Defendant also argues that the criminal contempt hearing "was constitutionally deficient and retaliatory" and that she was "denied the opportunity to: 1) [c]all witnesses, 2) [p]resent evidence, and 3) [c]onfront [Father] or Ms. Fletcher under oath." However, it was Defendant's own refusal to participate in the criminal contempt hearing that prevented her from doing any of those things. Defendant notes in her reply brief that she "was arrested on December 6, 2023[,] and held without bond until the December 13, 2023 [criminal contempt] hearing." She argues that this deprived her of the right to call witnesses and prepare for the hearing. However, this ignores the fact that at the March 24, 2023 hearing, Judge Wright orally notified Defendant that she was being charged with criminal contempt for refusing to provide her financial information or contact Ms. Fletcher. Defendant was later served with written notice of those charges. Over eight months elapsed between when Defendant was orally informed of the criminal contempt charges and when those charges were heard. Defendant has offered no explanation for how a one-week incarceration during this eight-month period prevented her from preparing for the criminal contempt hearing. "Tennessee law is well-established that a party who invites or waives error, or who fails to take reasonable steps to cure an error, is not entitled to relief on appeal." *State v. Banks*, 271 S.W.3d 90, 170 (Tenn. 2008) (citing Tenn. R. App. P. 36(a)). Defendant's argument that she was deprived of the opportunity to call witnesses or present evidence at a hearing during which she overtly, loudly, and repeatedly refused to participate in the proceeding is absurd.

Further, Defendant argues that she was not provided notice of the criminal contempt charge stemming from her violation of the Standing Order; however, a summons in the appellate record shows that Defendant was personally served with notice of that criminal contempt charge on July 14, 2023. Accordingly, this issue is without merit.

*e.*

Defendant next argues that the trial court abused its discretion in denying her post-judgment motion filed pursuant to Tennessee Rules of Civil Procedure 59 and 60. A Rule 59 motion "should be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Burris v. Burris*, 512 S.W.3d 239, 245 (Tenn. Ct. App. 2016) (quoting *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)). Rule 60 motions may be granted to relieve a party from a final judgment due to

(1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02.  However, "[t]he judgment of a court should not 'be lightly changed, altered, amended or set aside, but only done upon very clear, convincing, cogent evidence that a true injustice has been done to the complaining party and that the complaining party is in no wise responsible, or termed in another way, negligent in protecting that party's interest.'" *Polster v. Polster*, No. M2020-01150-COA-R3-CV, 2021 WL 4167927, at *7 (Tenn. Ct. App. Sept. 14, 2021) (quoting *Myers v. Myers*, 891 S.W.2d 216, 220 (Tenn. Ct. App. 1994)).  Accordingly, we review Rules 59 and 60 motions under the abuse of discretion standard.  *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012).

As Defendant states in her appellate brief, the following grounds were set forth in her post-judgment motion: "1) [t]he [trial] court's denial of [Defendant's] right to call witnesses or present evidence at the contempt hearing, 2) [Defendant's] arrest and prosecution on February 7, 2023, at the hands of Judge Wright, who then refused to disqualify himself, 3) [t]he use of protected financial information in violation of [VAWA], 4) [o]bstruction of therapy compliance by opposing parties and the treating counselor, and 5) [t]he [trial] court's refusal to rule on a pending motion for sanctions."  The trial court denied the motion.

On appeal, Defendant argues that the trial court abused its discretion by denying her post-judgment motion without a hearing.  However, parties are not entitled to a hearing on post-judgment motions.  *Savage v. Hildenbrandt*, No. M1999-00630-COA-R3-CV, 2001 WL 1013056, at *15 (Tenn. Ct. App. Sept. 6, 2001) (citing *Custom Built Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *5 (Tenn. Ct. App. Feb. 6, 1998)).  Therefore, this argument is without merit.

Defendant next argues that, in ruling on her post-judgment motion, "[r]ather than independently evaluating the evidence . . . [the trial court] adopted prior characterizations of [Defendant] made by her adversary and unsupported by the record . . . includ[ing] dismissive language suggesting mental instability."  Specifically, the trial court's order notes that

> [t]he allegations in Defendant's [post-judgment] motion reflect a continuing pattern in her filings that shows each time a court does not rule in her favor, Defendant delusionally perceives "fraud," "case fixing and racketeering," and grand criminal conspiracies by multiple agencies of the justice system

working against her. An example of this unfounded and delusional thinking is provided in Defendant's motion where she alleges that "[a]ll the judges that ever presided in [Defendant's cases] abused the power and prestige of their judicial office to engage in racketeering offenses of obstruction of justice, witness tampering, witness retaliation and case fixing rooted in fraud for the best interests of the Mccurry [*sic*] enterprise."

The trial court also notes that Defendant "pointed to no actual facts established by the proof in the record to demonstrate or suggest fraud." "Forming an opinion of litigants and issues based on what is learned in the course of judicial proceedings is necessary to a judge's role in the judicial system." *Cain-Swope v. Swope*, 523 S.W.3d 79, 89 (Tenn. Ct. App. 2016) (quoting *Groves v. Ernst-W. Corp.*, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *5 (Tenn. Ct. App. Sept. 16, 2016)). Nothing in the quoted language suggests that the trial court's opinion that Defendant's arguments are "delusional" was based upon anything other than what the trial court judge learned in the course of the judicial proceedings. Accordingly, this argument is meritless.

Defendant also argues that the trial court erred by not referencing in its order the exhibits attached to her post-judgment motion. Defendant asserts that these exhibits "demonstrat[e] her compliance efforts" and show that she "had a pending motion to vacate the psychological evaluation and parenting assessment[.]" However, as addressed above, even if Defendant had succeeded in getting the order that she contact Ms. Fletcher overturned, it would not have changed the fact that she was required to comply with the order so long as it was in effect. *Frye*, 80 S.W.3d at 19. Moreover, Defendant fails to cite in her appellate brief to any portion of the record demonstrating that she attempted to comply with the underlying orders and was prevented from doing so. "'Judges are not like pigs, hunting for truffles' that may be buried in the record[.]" *Cartwright v. Jackson Cap. Partners, Ltd. P'ship*, 478 S.W.3d 596, 616 (Tenn. Ct. App. 2015) (quoting *Flowers v. Bd. of Professional Responsibility*, 314 S.W.3d 882, 899 n.35 (Tenn. 2010)). Tennessee Rule of Appellate Procedure 27(a)(7) requires appellants to include in their appellate brief "the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record[.]" These record citations "shall be to the pages of the record involved." Tenn. R. App. P. 27(g). "If reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages in the record at which the evidence was identified, offered, and received or rejected." *Id*. Because Defendant failed to provide any citation to the record supporting her assertion that she provided the trial court with evidence of her "compliance efforts," this issue is waived. *Lovlace v. Copley*, 418 S.W.3d 1, 33 n.17 (Tenn. 2013).

Defendant next complains that the trial court "failed to acknowledge" that she was pro se and "made good-faith, legally supported efforts to preserve her rights and present factual evidence." She further complains that the trial court "failed to assess whether the contempt judgment[s'] ongoing application would be inequitable under Rule 60.02(5)"

- 19 -

because Defendant is purportedly being harmed by the use of the judgments in a separate termination of parental rights and stepparent adoption proceeding in which Defendant is a respondent. However, Defendant fails to properly explain or give adequate legal support for why these contentions require appellate relief. *See* Tenn. R. App. P. 27(a)(7). Accordingly, these issues are also waived. *Yebuah v. Ctr. for Urological Treatment, PLC*, 624 S.W.3d 481, 491 (Tenn. 2021).

Finally, Defendant complains that the trial court initially failed to include a certificate of service showing that the order denying Defendant's post-judgment motion was served upon the State. However, as Defendant concedes in her appellate brief, the trial court clerk filed an Amended Certificate of Service pursuant to Tennessee Rule of Civil Procedure 58 on March 24, 2025, "resolving the Rule 58 violations[.]" Accordingly, this corrected error does not entitle Defendant to any appellate relief.

For these reasons, we affirm the trial court's denial of Defendant's post-judgment motion.

*f.*

With leave of this Court, Defendant filed a supplemental appellate brief in which she raises multiple issues relating to the fact that she has been unable to obtain a video or audio recording of the February 7, 2023 trial court hearing.[2] In summary, Defendant argues that the trial court disabled its courtroom recording system and the Standing Order prohibited Defendant from recording the February 7 child custody hearing without leave of the trial court, thus Defendant was unable to create an adequate record for meaningful appellate review. Defendant also argues that because her "custody and parenting-time rights were contested" at the February 7 hearing, the lack of a recording of that hearing "constitutes the deliberate destruction or withholding of potentially exculpatory evidence in violation of *Brady v. Maryland*[, Defendant's] right of access to the courts under 42 [United States Code section] 1983 and the Fourteenth Amendment's Due Process Clause."

The gist of these arguments is that a recording of the February 7 hearing would somehow demonstrate that the trial court's orders that Defendant violated were erroneous. Specifically, Defendant argues that a recording of the hearing would "likely contain: 1) [t]estimony from [Defendant] regarding judicial misconduct and professional misconduct by [Father's counsel], 2) [the trial court's] on-the-record for prior contempt's [*sic*] on February 7, 2023; 3) [o]pposing counsel's representations and influence on the

---

[2] Defendant also suggests in portions of her supplemental brief that there is no recording of the March 24, 2023 trial court hearing, while simultaneously arguing that the trial court "secretly recorded" the March 24 hearing without her knowledge. Notwithstanding these assertions by Defendant, the record contains two video recordings of the March 24 hearing and the audio recordings of that hearing created by Defendant and later filed with the trial court. Thus, these arguments regarding the March 24 hearing are meritless.

outcome of the case." Again, however, even if the trial court's orders that Defendant contact Ms. Fletcher and produce her financial documentation were erroneous, Defendant was required to obey those orders "unless or until they were dissolved by [the trial] court or reversed on appeal." *Frye*, 80 S.W.3d at 19. "Defendant's belief those orders were erroneous does not change the fact that [s]he willfully failed to obey the orders." *Id*. Therefore, the lack of a recording of the February 7, 2023 hearing does not entitle Defendant to any appellate relief.

## CONCLUSION

The judgment of the Circuit Court for Washington County is affirmed, and this case is remanded for proceedings consistent with this opinion. Costs on appeal are assessed to the appellant, Agness McCurry, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE